| | | |
|---|---|---|
| KASPAROV, PTE LTD., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 5:22-cv-00503 |
| v. | ) | |
| | ) | |
| JOSEPH ZACHERL, | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| *Defendant*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Kasparov Pte Ltd. ("Kasparov") alleges the following based upon documents and information in its possession, upon its factual investigation to date, and upon information and belief where noted. Kasparov believes that substantial additional evidentiary support for its allegations will be obtained in discovery.

## NATURE OF THE ACTION

1.      This case is about a scheme by Defendant Joseph Zacherl ("Zacherl") and at least two other individuals, Jason Linehan ("Linehan") and Kyle Detz ("Detz"), to fraudulently convert the digital assets contained in two Kasparov-owned wallets.

2.      Zacherl executed his scheme by making material misrepresentations to induce Kasparov to provide Zacherl and his co-conspirators with access to the digital assets in the two Kasparov-owned wallets. After securing their access to the wallets through fraud, Zacherl and his co-conspirators unlawfully misappropriated approximately $8,100,000 in digital assets belonging to Kasparov (valued as of the date of this Complaint).

3.      Moreover, the $8.1 million in digital assets have voting rights, and by controlling those voting rights, Zacherl is looting millions of dollars of *other* assets as well.

4.     As detailed below, after Kasparov afforded Zacherl and his co-conspirators access to two of Kasparov's digital wallets, they seized control of the wallets and shut Kasparov out.  Zacherl's actions are akin to those of a house-sitter who changes the homeowner's locks, declares that he now owns the house, and refuses to move out.

5.     The events leading up to Zacherl's theft from Kasparov are as follows.  In 2019, Kasparov—initially through the work of its two founders, *i.e.*, Talo and Tiantian Kullander (along with his company, Amber) (collectively, the "Founders") had a novel idea for a new digital finance project.  The project was originally known as the KeeperDAO Project, and later renamed the "Rook Project" (the "Rook Project" or "Project").  To manage the Rook Project on behalf of its Founders, Kasparov was incorporated on or around July 6, 2020.

6.     There are several important things to know about the Rook Project from the outset.

a.  **First, what does the Rook Project do?**  The Project was designed to enable— and now enables—members of the public to route trading orders via the Project's infrastructure, and take part in the trading profits generated from market makers (or "Keepers") that fill these orders.  The members of the public making these investment are known as "Stakers" and their investments are known as "stakes."  To compensate Stakers for staking their own personal crypto in the Rook Project—thereby ensuring that the Project had enough capital on hand to take advantage of investment opportunities, especially arbitrage opportunities in the crypto markets—Kasparov issued tokens native to the Project (known as "ROOK" or "ROOK tokens"), and distributed the ROOK tokens to the Stakers in proportion to the size of each stake.

b.  **Is the Rook Project successful?**  Yes, the Rook Project has been highly successful.  The arbitrage opportunities the Rook Project leverages to earn profits have so far netted it millions of dollars in profits, and at the time of this Complaint, the ROOK token,

which represents a share of underlying profits earned by the Rook Project, is trading at around $16 a share.

      c. **How does Kasparov, as the creator, founder and lead developer for the Rook project get compensated?** As discussed further below, Kasparov created a pool of 1,000,000 ROOK tokens that Kasparov could and did (1) use to compensate persons for services necessary to the success of the Rook Project (e.g., certain computer programming expertise) and (2) keep for itself, as compensation for its creation of the Project (these are referred to herein as "Team Tokens"). Team Tokens are very similar to founders' shares in a traditional start-up company: they give the team that created the project an ongoing financial interest in the continued health and success of their Project. These 1,000,000 ROOK tokens were separate from any ROOK tokens issued to compensate Stakers for staking their own cryptocurrency in the Rook Project.

      d. **What was Kasparov's exit plan?** Kasparov never intended to be the ultimate and final owner of the Rook Project. Just as the founders of a conventional software company may look forward to the day they take their fledgling company public (often ceding control to public shareholders and making profits on their founders' shares), holders of a decentralized project, like the Rook Project, may choose to turn the project over to the public. That is what happened here. Specifically, on or around August 1, 2021, Kasparov turned its ownership and control of the DAO Treasury Wallet—which contains assets worth tens of millions of dollars that were generated by the Project through its Keepers—to the Project and its public investors.

      e. **How did Kasparov's decision to turn the Rook Project over to the public work?** Kasparov set up a Decentralized Automated Organization ("DAO") to run the Rook project. All decisions relevant to the project are made by the DAO, and the DAO also can hire and pay individuals to assist it in running the Rook Project. All decisions by the DAO are voted on by ROOK token holders (who, as noted above, receive ROOK token in proportion to

the assets they stake). Like selling a start-up company to new buyer, it is the new buyer (here, the DAO) that calls the shots with regard to the management of the assets in the DAO Treasury Wallet. But the outgoing, founding management team still owns their original equity shares (here, the Team Tokens), and therefore typically is positioned to sell its interests, often at a significant profit.

7.      After Talo and Amber founded the Project in late 2019, they decided to collaborate with Defendants Zacherl, Linehan and Detz, who would work on various aspects of the Rook Project, including software development and marketing.

8.      Accordingly, Amber, Talo, and VolleyFire, an entity that, upon information and belief, is controlled by Zacherl, entered into a services agreement on or around April 29, 2020 (the "Services Agreement"). Therein, Amber, Talo, and VolleyFire agreed that Zacherl would receive 4% of an "initial supply" of tokens issued by the Project. This ultimately amounted to 40,000 ROOK tokens issued by Kasparov from its initial issuance of 1,000,000 ROOK tokens. In exchange, Zacherl was to provide services to the Project such as leading internal trading efforts at the DAO. Kasparov retained ownership of the remaining ROOK tokens, which amounted to 960,000 ROOK tokens.

9.      Linehan and Detz did not receive a share of the initial tokens. Rather, they received only salary for their work.

10.      Meanwhile, to the support the Rook Project, Kasparov created several digital wallets, including two that are particularly relevant here:

a.      **The Team Tokens Wallet.** Kasparov established the Team Tokens Wallet on or around October 31, 2020, and funded it with 1,000,000 ROOK tokens. The 1,000,000 ROOK tokens in the Team Tokens Wallet was the "initial supply" of tokens referenced in the Services Agreement among Amber, Talo, and VolleyFire. As noted above, Kasparov used these ROOK tokens to compensate the Founders and pay for expenses and other services that

were essential to keeping the Rook Project on track, including paying Zacherl (4% of the ROOK tokens, today worth over $1 million).

b. **The Second Company Wallet.** Kasparov established the Second Company Wallet on or around June 15 2021, and funded it with $700,000 in USD Coin (a type of cryptocurrency pegged to the U.S. Dollar) on or around June 16, 2021. Kasparov received the $700,000 in USD Coin from another crypto company, pursuant to a token swap, wherein Kasparov-owned digital assets were swapped for USD Coin. The tokens used in the swap were owned by Kasparov. As a result, the USD Coin obtained in the swap also was owned by Kasparov. The Second Company Wallet was created by Kasparov to use in its discretion to pay for expenses such as salary payments, legal expenses, and smart contract audits.

11.     Both of the above-referenced wallets (the "Wallets") are multi-signature wallets that required several individual approvals (sometimes referred to as "signatures") from appointed/authorized individuals before any transaction to or from the Wallets could be consummated. The initial authorized signatories on both Wallets were the two principals of Talo and Amber, i.e., Taiyang Zhang and Tiantian Kullander, respectively.

12.     In or around between October 2021 and February 2022, Zacherl and Linehan were added as signatories to one or both of the two Kasparov Wallets, under the agreement that as agents of Kasparov, Zacherl and Linehan would be subject to Kasparov's control. On information and belief, Zacherl falsely represented to Kasparov that he and/or his co-conspirators would use their signatory access to the Wallets to aid them in their performance of services related to the Project, including executing transactions on Kasparov's behalf. Kasparov, relying on Zacherl's false statements, made Zacherl and Linehan signatories to both Wallets. Zacherl was added to both Wallets on or around October 14, 2021, while Linehan was added to the Team Tokens Wallet on or around January 6, 2022 and to the Second Company Wallet on or around February 23, 2022.

13.	Thereafter, in February 2022, Zacherl told Kasparov that he was unhappy with the allocation of the Team Tokens, more of which he believed should have been allocated to himself, Detz and Linehan.  However, this was more compensation than they had bargained for and agreed to receive.

14.	On April 20, 2022, Zacherl electronically messaged the two principals of Kasparov, Tiantian Kullander and Taiyang Zhang, stating "[n]eed a few signatures today please. Payments from strategic reserve → to 4 keepers from pilot program integration bounties[,]" and that "[i]f you guys can help knock out the first one we can polish off the rest." In response, one of the principals of Kasparov, Tiantian Kullander, replied "[d]one."  Through this communication, Zacherl offered to conduct three of the four transactions on behalf of Kasparov, if Kasparov agreed to add Zacherl's co-conspirator, Detz, as a signatory to the Team Tokens Wallet.  After receiving this message, reasonably relying on Zacherl's representation, on or around April 20, 2022,  Kasparov added Detz as a signatory to the Teams Tokens Wallet so that Zacherl, Detz, and Linehan could conduct transactions on behalf of Kasparov, subject to Kasparov's control.

15.	However, after Kasparov afforded Zacherl, Linehan and Detz access to one or more of these Wallets, Zacherl, Linehan and Detz abused the trust and confidence Kasparov had placed in them as its agents.  They each conspired with one another and others to prohibit Kasparov from accessing and controlling both of its Wallets.

16.	More specifically, with regard to the Team Tokens Wallet (which contains ROOK tokens), on or around June 7, 2022, Zacherl, Linehan and Detz, without authorization from Kasparov, removed a number of the original, Kasparov-affiliated signatories to the Team Tokens Wallet and concurrently added Tommy van Rheeden ("van Rheeden"), an agent of Zacherl, Linehan and Detz, as a new signatory.  Through these unapproved actions, Zacherl, Linehan, Detz and van Rheeden gained the ability to control the Team Tokens Wallet and used

that control to prohibit Kasparov from accessing its Wallet and the ROOK tokens contained therein.

17. On or around July 5, 2022, Kasparov's principals contacted Zacherl, Linehan and Detz and demanded that their access to the Team Tokens Wallet be restored. However, rather than restore Kasparov's principals to their control of the Team Tokens Wallet, Zacherl and Linehan conspired to cut off Kasparov from access to a second Kasparov-owned wallet, the Second Company Wallet, containing digital assets denominated in USD Coin ("USDC"). Taking a page from their June 2022 scheme, on or around July 5, 2022, Zacherl and Linehan removed a number of the original, Kasparov-affiliated signatories to this Second Company Wallet and replaced them with Detz and van Rheeden. As a result, Kasparov was unable access the USDC in the Second Company Wallet.

18. The result of these machinations is that Zacherl, Linehan, Detz and/or their agents seized control of the two Wallets to the exclusion of Kasparov, and have used that control to eliminate Kasparov's access to and control over the digital assets contained in the two Kasparov-owned Wallets.

19. Zacherl, Linehan and Detz have been enriched in several notable ways by their misconduct. First, they have exclusive control over millions of dollars' worth of tokens that Kasparov owns. Second, Zacherl, Linehan and Detz are looting the millions of dollars from the DAO Treasury Wallet (i.e., from the profits of the Project), and preventing Kasparov from using its voting rights (i.e., the rights arising from ROOK tokens) to stop them.

20. Specifically, Zacherl has been drawing a "base salary" from the DAO Treasury Wallet of $722,000/year, as has Linehan—i.e., a total of $1.4 million/year in " base salaries." In fact, although the revenue in the DAO Treasury Wallet for Q4 of 2022 was just $1500, Zacherl and Linehan spent in excess of $2M in salaries. Kasparov, through the ROOK tokens it owns, could vote to stop this looting of the DAO Treasury Wallet. Zacherl, Linehan and

Detz, by unlawfully preventing Kasparov from accessing (and hence, from voting) its ROOK tokens, are preventing Kasparov from putting an end to their self-dealing and looting of the DAO Treasury Wallet.

## PARTIES

21. Kasparov is a private limited company incorporated under the laws of Singapore. Kasparov maintains its principal place of business in Singapore. Kasparov has at all relevant times been owned by Talo and Tiantian Kullander, a principal of Amber, on a 50/50 basis. Tiantian Kullander tragically passed away on November 23, 2022; accordingly, as used herein, references to Mr. Kullander that postdate November 23, 2022, should be understood to refer to Mr. Kullander's estate and/or heirs.

22. Upon information and belief, Joseph Zacherl is an individual domiciled in the Eastern District of North Carolina.

23. Upon information and belief, non-party VolleyFire is a limited liability company incorporated in Delaware that maintains its principal place of business in the Eastern District of North Carolina.

24. Upon information and belief, non-party Jason Linehan is an individual domiciled in New Hampshire.

25. Upon information and belief, non-party Kyle Detz is an individual domiciled in Massachusetts.

## JURISDICTION AND VENUE

26. The Court has personal jurisdiction over Defendant Joseph Zacherl because he is domiciled in North Carolina.

27. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the plaintiff, Kasparov, and the defendant, Zacherl, are diverse.

28.     Venue is proper under 28 U.S.C. § 1391(b)(1) because defendant resides in this district.

## BACKGROUND

**A.      Kasparov's Founders Create Kasparov and The Rook Project.**

29.     The Rook Project was founded by Talo and Amber in late 2019.  Talo's principal, Taiyang Zhang, announced the launch of the Project—at the time called "KeeperDAO"—in a blog posting on Medium.com, in which he described the Project as "a joint project between Talo and Amber Group."  *See* Taiyang Zhang, *Introducing KeeperDAO, an on-chain liquidity underwriter*, Medium (Dec. 27, 2019), https://medium.com/keeperdao/introducing-keeperdao-an-on-chain-liquidity-underwriter-dbb63731f4a5.

30.     The Rook Project's chief object is to enable members of the public, known as "Stakers," to submit trading orders through the Project's trading infrastructure.  In turn, the Project's off-chain bots, known as "Keepers," extract value by filling these orders, and rebate a portion of the profits back to the user.  This enables users to benefit from profit that would have otherwise been extracted by external market makers.  Ultimately, profits from these types of transactions inure to the benefit of the Project's users.

31.     Kasparov supported and encouraged the public's participation in the Project through the issuance of a native token.  Initial tokens issued by Kasparov for use in the Project were known as KPR tokens; those later were renamed to ROOK tokens.  "Stakers" involved in the Project would earn ROOK tokens in return for supplying liquidity into a common pool that "Keepers" could use for flash loans.  Flash loans are transactions that allow the borrowing of an asset as long as it is returned in the same Ethereum block.  As participation in the Project grows, the value of the Project increases.

32.     On July 6, 2020, Talo and Tiantian Kullander, on behalf of Amber, incorporated Kasparov in Singapore for purposes of administering the Project, including entering into any contracts necessary for the implementation of the Project.

**B.     Kasparov and Its Founders Create and Fund Several Digital Wallets.**

33.     Over the life of the Project, Kasparov and, before Kasparov's incorporation, Kasparov's Founders, established and funded several cryptocurrency wallets to support the Project and its goals.

a.     **The First Company Wallet.**    In April 2020, to cover the day-to-day administration of the Project, including the payment of salaries to Project contractors, marketing expenses, legal fees, and costs of conducting smart contract audits, Kasparov's Founders created a wallet (the "First Company Wallet") funded with $1.5 million in USD Coin that they obtained from two initial seed investors, Polychain and 3AC. There were two approval signatories to the First Company Wallet, one each from Talo and Amber, as the Project's Founders, and approval from only one of those two signatories was required to conduct transactions using assets from that Wallet.

b.     **The Team Tokens Wallet.**    On or about October 31, 2020, Kasparov created 1,000,000 ROOK tokens and simultaneously established a second wallet, the Team Tokens Wallet, in which Kasparov deposited those 1,000,000 ROOK tokens.  These 1,000,000 ROOK tokens were the "initial supply" of ROOK tokens issued by Kasparov.  As of about May 14, 2021, the Team Tokens Wallet had five authorized signatories: (1) Taiyang Zhang, (2) Tiantian Kullander, (3) Bainy Zhang, (4) Benjamin Wang, and (5) Susruth Nadimpalli, all of whom worked for or on behalf of Kasparov.  The multi-signature confirmation policy applicable to the Team Tokens Wallet required the approval/signature of at least three of those five signatories before a transaction involving the Team Tokens Wallet would be effectuated.  At the time of the creation of the Team Tokens Wallet, Zacherl had an ownership interest in 40,000

ROOK tokens pursuant to the Services Agreement, while the remainder of the 1,000,000 ROOK tokens, i.e., 960,000 ROOK tokens, were owned by Kasparov.

c. **The Second Company Wallet.** On or about June 16, 2021, the First Company Wallet was compromised by an unknown hacker, resulting in the loss of 681,843 of USD Coin, which was the entirety of Kasparov's holdings in that wallet at the time. In response, Kasparov created a new wallet (the "Second Company Wallet"). At the time of its creation, the list of authorized signatories of the Second Company Wallet were (1) Tiantian Kullander, (2) Taiyang Zhang, (3) Bainy Zhang, and (4) Susruth Nadimpalli. All of those signatories were representatives and/or associates of Kasparov, the owner of the Second Company Wallet and the USDC tokens therein. At that time, the confirmation security protocols applicable to the Second Company Wallet required approval from at least two of these four signatories before a transaction involving that Wallet would be effectuated. On or about June 17, 2021, Kasparov funded the Second Company Wallet with $700,000 in USD Coin that Kasparov obtained through a token swap with another cryptocurrency project; pursuant to the swap, Kasparov-owned digital assets were swapped for USD Coin. Thus, the assets in the Second Company Wallet were owned by Kasparov.

d. **The DAO Treasury Wallet.** On or about November 10, 2020, Kasparov established the DAO Treasury Wallet to receive and store the profits of the Project—i.e., the cryptocurrency trading and flash loan profits from Keepers. The assets in the DAO Treasury Wallet were owned and controlled by Kasparov until on or around August 1, 2021. On or around August 1, 2021, Kasparov voluntarily released control over the Project (and with it, the DAO Treasury Wallet) to public ROOK token holders. The DAO Treasury Wallet holds multiple different cryptocurrencies and tokens and is currently worth approximately US $42,000,000 (valued as of the date of this Complaint).

34.     As of the date of this Complaint, the balances in the four Wallets described above are as follows:

| Wallet | ROOK token | USD Coin | Uniswap v2 LP | Dollar Value ($US) |
|---|---|---|---|---|
| First Company Wallet | 0 | 0.450586 | 0 | US$0.45 |
| Team Tokens Wallet (misappropriated) | 452,137.53 | 0 | 1,186.94 | US$7,454,084.47 |
| Second Company Wallet (misappropriated) | 0 | 714,144.85 | 0 | US$711,816.52 |
| DAO Treasury Wallet (being looted by defendant Zacherl, along with Linehan and Detz) | ~US$42 million, comprised of multiple different cryptocurrencies and tokens | | | |

35.     Kasparov owns all of the digital assets in the First Company Wallet and the Second Company Wallet. Similarly, Kasparov owns all of the digital assets in the Team Tokens Wallet, except any remaining portion of the 40,000 ROOK tokens owned by Zacherl pursuant to the Services Agreement. Prior to around August 1, 2021, when Kasparov chose to turn over the DAO Treasury Wallet to the public Stakers to manage, as the Founder of the Rook Project, Kasparov also owned all assets in the DAO Treasury Wallet.

**C.     Kasparov Reaches Agreements with Defendants for Their Assistance With the Project.**

36.     Zacherl's involvement with the Project began in April, 2020, when Talo and Amber entered into a Services Agreement with VolleyFire LLC, an entity that, upon information and belief, is controlled by Zacherl. The Services Agreement was executed by Zacherl on or around April 29, 2020, on information and belief, in North Carolina, where he resides. Pursuant to that Services Agreement, Zacherl agreed to the following terms:

a.     Zacherl would lead certain trading elements in the Project, including the creation and operation of the Keepers that would consummate cryptocurrency arbitrage trades.

b. Zacherl would receive 4% of the initial tokens issued by the Project, i.e., 4% of what would become the 1,000,000 ROOK tokens that Kasparov created and transferred to the Team Tokens Wallet.

37. In addition to the compensation that Zacherl would receive pursuant to the Services Agreement, Kasparov also subsequently agreed to pay Zacherl $10,000 per month for the services he provided.

38. Linehan began working on the Project when, in June 2021, at Zacherl's recommendation, Kasparov engaged him to serve as an unpaid ambassador for the Project. In or around August 2021, after Linehan became more involved with the Project, Kasparov announced that Linehan would work for the KeeperDAO and would be paid US$3,750 (payable in USD Coin) per month from the DAO Treasury Wallet. Unlike Zacherl, Linehan was not paid with Kasparov's assets, as the DAO Treasury Wallet had already been turned over to the public, and he had no written contractual relationship with Kasparov.

39. In July 2021, again at the recommendation of Zacherl, Detz also was engaged to work on the Project, as its External Affairs Lead. Like Linehan, Detz was to be paid for his services from the DAO Treasury Wallet, with funds which after August 1, 2021, were controlled by the DAO. He was not compensated using funds in any of Kasparov's wallets.

40. Unlike Zacherl, who was paid by Kasparov and engaged by Amber and Talo pursuant to the Services Agreement, both Linehan and Detz were compensated directly by the KeeperDAO using funds from the DAO Treasury Wallet for their services in support of the DAO's community initiatives. Neither Linehan nor Detz were ever compensated by Kasparov from funds or assets held in the Team Tokens Wallet or the Second Company Wallet.

**D.** **Kasparov Provides The Defendants With Access To the Team Tokens Wallet and the Second Company Wallet In Reliance on Zacherl's Misrepresentations.**

41.     Between October 2021 and February 2022, Kasparov added Zacherl and Linehan as signatories to the Second Company Wallet (containing over $700,000 in USD Coin), under the agreement that as agents of Kasparov, Zacherl and Linehan would be subject to Kasparov's control.  On information and belief, Zacherl falsely represented to Kasparov that he and/or his co-conspirators would use their signatory access to the Second Company Wallet to aid them in their performance of services related to the Project, including executing transactions on Kasparov's behalf.  On information and belief, neither Zacherl nor Linehan ever intended to execute transactions on Kasparov's behalf; rather, they intended to misappropriate the digital assets in the Second Company Wallet.

42.     On or about October 13, 2021, Kasparov added Zacherl as a signatory to the Second Company Wallet.

43.     On or about February 23, 2022, Kasparov also added Linehan as a signatory to the Second Company Wallet.

44.     Thus, as of around February 24, 2022, there were six signatories to the Second Company Wallet: (1) Tiantian Kullander, (2) Taiyang Zhang, (3) Bainy Zhang, (4) Susruth Nadimpalli, (5) Zacherl, and (6) Linehan.

45.     Zacherl and Linehan were authorized to access the Second Company Wallet only to assist Kasparov in the management of the Second Company Wallet in accordance with Kasparov's objectives for the Rook Project.

46.     Neither Zacherl nor Linehan disclosed their plan to use their new signatory authority as a means to deny Kasparov, its owners, representative and affiliates access to the Second Company Wallet.

47.     Between October 2021 and January 2022, Zacherl and Linehan were also added as signatories to the Team Tokens Wallet, under the agreement that as agents of Kasparov, Zacherl and Linehan would be subject to Kasparov's control.  Once again, on information and belief, Zacherl falsely represented to Kasparov that he and Linehan would use their signatory access to the Team Tokens Wallet to aid them in their performance of services related to the Project, including executing transactions on Kasparov's behalf, which would inure to Zacherl's and Kasparov's benefit.  On information and belief, Zacherl never intended to execute transactions on Kasparov's behalf; rather, he intended to misappropriate the Teams Tokens Wallet.

48.     Relying on Zacherl's misrepresentations, Kasparov agreed.

49.     On or about October 13, 2021, Kasparov also added Zacherl as a signatory to the Team Tokens Wallet.

50.     On or about January 6, 2022, Kasparov also made Linehan a signatory to the Team Tokens Wallet.  Accordingly, as of that date, there were seven signatories to the Team Tokens Wallet: (1) Taiyang Zhang, (2) Tiantian Kullander, (3) Bainy Zhang, (4) Benjamin Wang, (5) Susruth Nadimpalli, (6) Zacherl, and (7) Linehan.

51.     On or about April 2022, Kasparov held 452,137.53 ROOK tokens in the Team Tokens Wallet, the remainder having been distributed for various Project-related purposes. In or about April 2022, Kasparov owned all of the digital assets in the Team Tokens Wallet, except any remaining portion of the 40,000 ROOK tokens owned by Zacherl pursuant to the Services Agreement.  At that time, Zacherl and Linehan sought greater authority from Kasparov with regard to the management and development of the Project.  In response, Kasparov authorized Zacherl and Linehan to manage 177,777.53 of the over 450,000 ROOK tokens in the Team Tokens Wallet at their own discretion, provided that such discretion was exercised in good faith, in the interests of the Project, and subject to Kasparov's control.  This left a balance of

274,360 ROOK tokens that belonged to Kasparov that Zacherl and Linehan were *not* authorized to manage.

52.     On April 20, 2022, Zacherl messaged the two principals of Kasparov, Tiantian Kullander and Taiyang Zhang, stating "[n]eed a few signatures today please. Payments from strategic reserve ➔ to 4 keepers from pilot program integration bounties[,]" and that "[i]f you guys can help knock out the first one we can polish off the rest."  In response, one of the principals of Kasparov, Tiantian Kullander, replied "[d]one."  Through this communication, Zacherl offered to conduct three of the four transactions on behalf of Kasparov if Zacherl's co-conspirator Detz was added as a signatory to the Team Tokens Wallet by Kasparov.  After receiving this message, relying on Zacherl's representation,  on or around April 20, 2022, Kasparov added Detz as a signatory to the Teams Tokens Wallet so that Zacherl, Detz, and Linehan could conduct transactions on behalf of Kasparov, and subject to Kasparov's control.

### E.     Zacherl Misappropriated the Team Tokens Wallet

53.     On or about June 7, 2022, using their authority as signatories, Zacherl, Linehan and Detz conspired to create and execute a plan through which (1) Benjamin Wang, (2) Susruth Nadimpalli, and (3) Bainy Zhang, each of whom were representatives and/or associates of Kasparov, were removed as signatories on the Team Tokens Wallet.  Wang, Nadimpalli and Zhang had been signatories to the Team Tokens Wallet since its creation in November 2020.

54.     At the same time, one or about June 7, 2022, Zacherl, Linehan and Detz also conspired to have van Rheeden, who acted as their agent and who is not affiliated with Kasparov, added as a signatory to the Team Tokens Wallet.

55.     Kasparov did not authorize the removal of Wang, Nadimpalli or Zhang as signatories to the Team Tokens Wallet.  Nor did Kasparov authorize van Rheeden's inclusion as a new signatory to the Team Tokens Wallet.

56.     Until recently, as a result of these changes to the Team Tokens Wallet's signatories, only two of the original Kasparov signatories to the Team Tokens Wallet— Tiantian Kullander and Taiyang Zhang—continued to be signatories.  Following Tiantian Kullander's recent passing, only one of the original signatories—Taiyang Zhang—is still a signatory.  Importantly, even though the Team Tokens Wallet and the assets therein (other than any tokens still payable to Zacherl under the Services Agreement, if any) are the property of Kasparov, Kasparov no longer controls and has access to the Team Tokens Wallet.  That is because three signatories are needed to conduct any transactions using the Team Tokens Wallet, and only  two of the remaining signatories are affiliated with Kasparov.  Through their conspiracy, Zacherl, Linehan, Detz and their agent, van Rheeden, have misappropriated the Team Tokens Wallet, and the digital assets contained therein, from Kasparov, ensuring that, with their four signatories, they and their agents have a sufficient numerical bloc to control the Wallet, to the exclusion of Kasparov.

57.      Zacherl, Linehan, Detz and their agent, van Rheeden have used that control to unlawfully prohibit Kasparov and its appointed signatories from accessing or otherwise controlling the Team Tokens Wallet and the ROOK tokens in that Wallet.

58.     On or around November 28, 2022, Tiantian Kullander, one of Kasparov's principals, was removed as a signatory to the Team Tokens Wallet by Zacherl and his co-conspirators.  Tiantian Kullander tragically passed away on November 23, 2022.

59.     On or around January 10, 2023, van Rheeden was removed as a signatory for the Team Tokens Wallet. Another unknown entity was added as a signatory in his place.

60.     Kasparov did not approve of the June 2022 changes to the signatories to the Team Tokens Wallet described above.  Nevertheless, as a result of Zacherl's misconduct, Kasparov no longer has access to its funds in its Team Tokens Wallet.

**F.    Zacherl Misappropriated the Second Company Wallet**

61.    On or about July 5, 2022, a conference call was held during which Kasparov, through its Director, Tiantian Kullander, demanded the settlement of funds from the Team Tokens Wallet to a separate wallet to be held by Kasparov.  But on the very same day—rather than complying or reinstating the Kasparov-affiliated signatories to their former positions— Zacherl and Linehan took steps to further misappropriate Kasparov's property by taking control of the Second Company Wallet and the digital assets therein.  Specifically, on or around July 5, 2022, Zacherl and Linehan—acting unlawfully and without authorization from Kasparov— removed (1) Bainy Zhang and (2) Susruth Nadimpalli as signatories on the Second Company Wallet, leaving only Tiantian Kullander and Taiyang Zhang as the only remaining Kasparov-affiliated signatories on the Second Company Wallet.  On the same day, Zacherl and Linehan added Detz and van Rheeden as additional signatories to the Second Company Wallet.  This gave Zacherl, Linehan, and their agents four confirmatory signatures, while only two Kasparov-affiliated signatories remained.

62.    Importantly, also on or about July 5, 2022, Zacherl and Linehan, knowing that only two of the original Kasparov-affiliated signatories remained, changed the signatory confirmation security protocol applicable to the Second Company Wallet to now require a minimum of *three* confirmatory approvals from registered signatories.  In so doing, Zacherl and Linehan sought to prohibit the two remaining Kasparov-affiliated signatories from gaining access to or controlling the Second Company Wallet.  By contrast, Zacherl, Linehan, and their agents, with a total of four signatures, ensured that they would be able to maintain control of Kasparov's Second Company Wallet, wrongly excluding Kasparov.

63.    On or around November 28, 2022, Tiantian Kullander, one of Kasparov's principals, was removed as a signatory to the Second Company Wallet by Zacherl and his co-conspirators.  Tiantian Kullander tragically passed away on November 23, 2022.

64.     On or around January 10, 2023, van Rheeden was removed as a signatory for the Team Tokens Wallet. Another unknown entity was added as a signatory in his place.

65.     Kasparov did not approve of any of the July 2022 changes to the signatories to the Second Company Wallet described above.

66.     As a result of Zacherl's misconduct, Kasparov no longer has access to its funds in the Second Company Wallet.

**F.     Zacherl, Linehan and Detz take advantage of the situation they created to loot the DAO Treasury Wallet.**

67.     On information and belief, control and use of the funds in the DAO Treasury Wallet are subject to vote and approval of a majority of the voting shares of ROOK tokens.  On information and belief, after gaining access to the wallets, Zacherl and Linehan voted for, and began to pay themselves "base salaries" of $722,000 each year from the DAO Treasury Wallet. Furthermore, although the revenue for Q4 of 2022 was only $1500, Zacherl and Linehan spent in excess of $2 million in salaries.  Kasparov was unable to vote against (and likely prevent, given the large number of ROOK tokens it controls) Zacherl and Linehan's actions to loot the proceeds of the DAO Treasury Wallet, because Zacherl and Linehan have prevented Kaparov from accessing its ROOK tokens.

68.     In short, Zacherl, Linehan and Detz have not just misappropriated the assets in the Wallets, they have also deprived Kasparov of its voting rights.  And then, having stripped Kasparov of its ability to mind the shop, Zacherl and Linehan have proceeded to raid the till, taking massive amounts of assets out of the DAO Treasury Wallet and lining their own pockets.

## COUNT I: CONVERSION

69.     Kasparov realleges each and every allegation contained in paragraphs 1-68 above as if fully set forth herein.

70.     As described above, Kasparov is the owner of the Team Tokens Wallet and all digital assets contained therein (other than any tokens still payable to Zacherl under the Services Agreement, if any).  Furthermore, Kasparov is the owner of the Second Company Wallet and all digital assets contained therein.  Kasparov retains the right of immediate possession of the Team Tokens Wallet and the Second Company Wallet.  The digital assets in the Team Tokens Wallet and the Second Company Wallet are specific and identifiable. As of the date of this Complaint, the value in United States dollars of the tokens in the Team Tokens Wallet is US$7,454,084.47. Likewise, as of the date of this Complaint, the value in United States dollars of the tokens in the Second Company Wallet is US$711,816.52. Furthermore, the digital assets in the Team Tokens Wallet and the Second Company Wallet were never comingled with Zacherl's assets.

71.     As described above, Kasparov is the owner of the digital assets in Team Tokens Wallet (other than any tokens still payable to Zacherl under the Services Agreement, if any) and the Second Company Wallet.  As such, Kasparov retains the right of immediate possession of the foregoing digital assets.

72.     Zacherl has no right of ownership or possession of either the Team Tokens Wallet or the Second Company Wallet or the digital assets contained therein (other than any tokens still payable to Zacherl under the Services Agreement, if any).

73.     Zacherl knows that he has no right of ownership or possession in the Team Token Wallet or the Second Company Wallet, both of which belong to Kasparov.  Nonetheless, Zacherl, in conspiracy with Linehan, Detz and van Rheeden, unlawfully exercised dominion and control over the Wallets and unlawfully interfered with Kasparov's lawful use and control over the Wallets, and unlawfully deprived Kasparov from control over its Wallets and the digital assets contained therein.

74. Zacherl, in concert with Linehan, Detz and/or van Rheeden, have unlawfully caused Kasparov-affiliated signatories to be removed as signatories, and replaced those signatories with his co-conspirators, agents, and allies: Linehan, Detz and van Rheeden. None of these changes were approved by Kasparov.

75. As a result of the unapproved changes imposed by Zacherl and his co-conspirators as to the confirmation signatories, there are no longer a sufficient number of Kasparov-affiliated signatories to permit Kasparov to conduct business through or otherwise gain access to and/or control of Kasparov's digital assets in either the Team Tokens Wallet or the Second Company Wallet. Instead, as a result of those same changes, only Zacherl and his co-conspirators have the required number of signatories to conduct business through or gain access to the digital assets in the Team Tokens Wallet and the Second Company Wallet.

76. Zacherl and his co-conspirators have used their new-found and unapproved majority of authorized signatories for each Wallet to obtain and maintain unlawful possession of the Team Tokens Wallet and the Second Company Wallet and the digital assets therein, all of which belong to Kasparov (other than any tokens in the Team Tokens Wallet still payable to Zacherl under the Services Agreement, if any).

77. Kasparov has demanded that Zacherl and his co-conspirators restore Kasparov's control and ability to utilize to the Team Tokens Wallet and the Second Company Wallet by restoring the removed Kasparov-affiliated representatives as signatories to both the Team Tokens Wallet and the Second Company Wallet. Zacherl and his co-conspirators have refused to do so.

78. Kasparov has been injured by the refusal of Zacherl and his co-conspirators to restore the former Kasparov-affiliated signatories of both the Team Tokens Wallet and the Second Company Wallet, or to otherwise grant Kasparov access to and control of those Wallets.

79.     Zacherl's acts of conversion as set forth above were intentional, wanton, and malicious.

**COUNT II: BREACH OF CONTRACT**

80.     Kasparov realleges each and every allegation contained in paragraphs 1-79 above as if fully set forth herein.

81.     There was a valid contract between Kasparov and Zacherl concerning the use of the Teams Tokens Wallet.  Around October 2021, Kasparov offered Zacherl and Linehan the opportunity to be added as signatories to the Team Tokens Wallet as Kasparov's agents, *i.e.*, on the condition that Zacherl and Linehan utilize such signatory authority subject to Kasparov's control and prior authorization, and for the benefit of the Rook Project.   In exchange for good and valuable consideration, Zacherl and Linehan accepted.  Doing so was valuable to them, because among other things it allowed them to assume a greater role in managing the ROOK Project, to process transactions for the ROOK Project more expeditiously, and ultimately to utilize their signatories to misappropriate the ROOK tokens in the Teams Tokens Wallet.

82.     On or about October 13, 2021, Kasparov performed under its contact with Zacherl and added him as a signatory to the Team Tokens Wallet.   On or around January 6, 2022, Kasparov performed under its contract with Linehan and added him as a signatory to the Team Tokens Wallet.

83.     There was a valid contract between Kasparov and Zacherl and Linehan concerning the use of the Second Company Wallet, pursuant to which Kasparov, Zacherl and Linehan agreed that Kasparov would afford Zacherl and Linehan signatory authority over the Second Company Wallet as Kasparov's agents, *i.e.*, on the condition that Zacherl and Linehan utilize such signatory authority subject to Kasparov's control and prior authorization, and for the benefit of the Rook Project.

84.     On or about October 13, 2021, Kasparov performed under its contact with Zacherl and added him as a signatory to the Second Company Wallet.   On or about February 23, 2022, Kasparov, performed under its contract with Linehan, added him as a signatory to the Second Company Wallet.

85.     On or about June 7, 2022, Zacherl working with his co-conspirators, Linehan, Detz, and van Rheeden, breached the contract governing the use of the Teams Tokens Wallet by removing Kasparov-affiliated signatories Wang, Nadimpalli, and Zhang, from the Team Tokens Wallet without Kasparov's authorization. Further breaching the contract, Zacherl added van Rheeden, an individual unaffiliated with the Rook Project as a new signatory to the Team Tokens Wallet without Kasparov's authorization. Since three signatories are required to conduct transactions, and only two Kasparov-affiliated signatories remain after Zacherl's unauthorized removal of Kasparov-affiliated signatories, Zacherl intentionally cut off Kasparov's access to and control over its assets.   Zacherl and his co-conspirators currently control the digital assets in the Team Tokens Wallet, with four signatories, to the exclusion of Kasparov, the rightful owner.

86.     Similarly, another breach of contract occurred on or around July 5, 2022, when Zacherl removed two Kasparov-affiliated signatories—Bainy Zhang and Susruth Nadimpalli—from the Second Company Wallet, and added Detz and van Rheeden as signatories, without Kasparov's approval. On the same day, Zacherl changed the signatory confirmation security protocol applicable to the Second Company Wallet to now require a minimum of *three* confirmatory approvals from registered signatories. By making this change, Zacherl removed Kasparov's access to and control over its digital assets in the Second Company Wallet. Instead, Zacherl and his co-conspirators, who now have four signatories, control the digital assets in the Second Company Wallet.

87.     Zacherl's breach of the contract directly resulted in the loss of Kasparov's ownership, control, and dominion over its assets in the Team Tokens Wallet and the Second Company Wallet. Thus, Kasparov's damages are the assets in the two Wallets, currently worth over US $8,100,000.

88.     Kasparov's damages also include the loss of its voting rights in the ROOK tokens in the Teams Tokens Wallet, which has permitted Zacherl and Linehan to loot the DAO Treasury Wallet without Kasparov having been able to exercise its lawful rights to prevent Zacherl and Linehan from doing so.  Zacherl and Linehan have been enriched by several millions of dollars of ill-gotten gains as a result.

## COUNT III: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

89.     Kasparov realleges each and every allegation contained in paragraphs 1-88 above as if fully set forth herein.

90.     There was a valid contract between Kasparov and Zacherl concerning the use of the Teams Tokens Wallet.  Around  October 2021, Kasparov offered Zacherl and Linehan the opportunity to be added as signatories to the Team Tokens Wallet as Kasparov's agents, *i.e.*, on the condition that Zacherl and Linehan utilize such signatory authority subject to Kasparov's control and prior authorization, and for the benefit of the Rook Project.  Zacherl and Linehan accepted.  Doing so was valuable to them, because it allowed them to assume a greater role in managing the ROOK Project, to process transactions for the ROOK Project more expeditiously, and ultimately to utilize their signatories to misappropriate the ROOK tokens in the Teams Tokens Wallet.

91.     On or about October 13, 2021, Kasparov performed under its contact with Zacherl and added him as a signatory to the Team Tokens Wallet.   On or around January 6, 2022, Kasparov performed under its contract with Linehan and added him as a signatory to the Team Tokens Wallet.

92.     There was a valid contract between Kasparov and Zacherl and Linehan concerning the use of the Second Company Wallet, pursuant to which Kasparov, Zacherl and Linehan agreed that Kasparov would afford Zacherl and Linehan signatory authority over the Second Company Wallet as Kasparov's agents, *i.e.*, on the condition that Zacherl and Linehan utilize such signatory authority subject to Kasparov's control and prior authorization, and for the benefit of the Rook Project.

93.     On or about October 13, 2021, Kasparov performed under its contact with Zacherl and added him as a signatory to the Second Company Wallet.   On or about February 23, 2022, Kasparov performed under its contract with Linehan, added him as a signatory to the Second Company Wallet.

94.     Zacherl breached the contracts, as detailed above in paragraphs 85-86, by: (1) removing Kasparov-affiliated signatories to the Second Company Wallet and the Team Tokens Wallet without Kasparov's approval, (2) adding Detz and van Rheeden as signatories to one or both of the Wallets without Kasparov's approval, and (3) preventing Kasparov from accessing or controlling its assets in the Team Tokens and Second Company Wallets.

95.     Zacherl breached the implied covenant of good faith and fair dealing by unlawfully and intentionally taking actions (*i.e.*, changing the signatories on the two Wallets) that prevented Kasparov from receiving the benefits of the agreement between Kasparov and Zacherl to have Zacherl execute transactions on Kasparov's behalf.   By preventing Kasparov from accessing and controlling its assets in the Team Tokens and Second Company Wallets, Zacherl has deprived Kasparov of the benefits Kasparov contracted to receive, including the benefits of having a faithful agent and the benefit of being able to direct the usage of the tokens in the Teams Token Wallets and the Second Company Wallet.

## COUNT IV: UNJUST ENRICHMENT
### Pled in the Alternative to Breach of Contract

96.    Kasparov realleges each and every allegation contained in paragraphs 1-79 above as if fully set forth herein.

97.    Through the unapproved changes Zacherl and his co-conspirators implemented to the signatories associated with the Team Tokens Wallet and the Second Company Wallet, a measurable benefit has been conferred on Zacherl: namely, possession and control of the digital assets in the Wallets, currently worth over US $8,100,000.  In his current position, Zacherl has the power to transfer, spend, or further restrict these significant assets, as well as to prevent Kasparov for utilizing its voting rights arising from the ROOK tokens.

98.    Through their actions, Zacherl and his co-conspirators deliberately and consciously accepted the benefit of possessing and controlling the digital assets in the Team Tokens Wallet and the Second Company Wallet, which are owned by Kasparov (other than any tokens in the Team Tokens Wallet still payable to Zacherl under the Services Agreement, if any).

99.    The benefit that Zacherl and his co-conspirators accepted was not conferred by Kasparov officiously or gratuitously.  Rather, possession and control of the digital assets in the Team Tokens Wallet and Second Company Wallets were taken and have been maintained without Kasparov's approval and over its objection.

100.    If Zacherl were permitted to maintain the benefit of possession and control of the Wallets and the digital assets therein, Zacherl would receive a windfall to which he is not entitled.  Under the circumstances, it would be inequitable to permit Zacherl to maintain the Wallets or the digital assets therein (other than any tokens still payable to Zacherl under the Services Agreement, if any), to the detriment and exclusion of their rightful owner, Kasparov.

## COUNT V: ACTUAL FRAUD

101.     Kasparov realleges each and every allegation contained in paragraphs 1-100 above as if fully set forth herein.

102.     On April 20, 2022, Zacherl messaged the two principals of Kasparov, Tiantian Kullander and Taiyang Zhang, through electronic messenger stating "[n]eed a few signatures today please. Payments from strategic reserve → to 4 keepers from pilot program integration bounties[,]" and that "[i]f you guys can help knock out the first one we can polish off the rest." In response, one of the principals of Kasparov, Tiantian Kullander, replied "[d]one." Through this communication, Zacherl offered to conduct three of the four transactions on behalf of Kasparov if Zacherl's co-conspirator Detz was added as a signatory to the Team Tokens Wallet by Kasparov. After receiving this message, relying on Zacherl's representation, on or around April 20, 2022, Kasparov added Detz as a signatory to the Teams Tokens Wallet so that Zacherl, Detz, and Linehan could conduct transactions on behalf of Kasparov, and subject to Kasparov's control.

103.     On information and belief, by requesting that Kasparov add Detz as a signatory on the Team Tokens Wallet, Zacherl never intended to solely execute these three transactions on Kasparov's behalf; rather, Zacherl intended to misappropriate the digital assets in the Team Tokens Wallet.

104.     Zacherl's statements were reasonably calculated to deceive Kasparov, given the relationship of trust and confidence between Kasparov and Zacherl, so that Zacherl and his co-conspirators, Detz, Linehan, and van Rheeden could convert and misappropriate the assets in the Team Tokens Wallet.

105.     On information and belief, Zacherl made these statements knowing them to be false with the intent to deceive Kasparov, so that Kasparov would give Zacherl's co-conspirator Detz signatory access to the Team Tokens Wallet so that Zacherl and his co-conspirators could

misappropriate the assets in the Wallet. On information and belief, Zacherl never intended to solely execute transactions on Kasparov's behalf; rather, he intended to misappropriate the assets in the Team Tokens Wallets.

106.    Reasonably relying on Zacherl's false representations, Kasparov gave Detz signatory authority to the Team Tokens Wallet on or around April 20, 2022.

107.    Using their signatory access, on or about June 7, 2022, Zacherl working with his co-conspirators, Linehan, Detz, and van Rheeden, fraudulently removed Kasparov-affiliated signatories: Wang, Nadimpalli, and Zhang, from the Team Tokens Wallet without Kasparov's authorization. Furthermore, Zacherl added Tommy van Rheeden, an individual unaffiliated with the Rook Project as a new signatory to the Team Tokens Wallet without Kasparov's authorization. Since three signatories are required to conduct transactions, and only two Kasparov-affiliated signatories continue to be signatories today—one since Tiantian Kullander's tragic passing—Zacherl and his co-conspirators currently control the digital assets in the Team Tokens Wallet, to the exclusion of Kasparov, the rightful owner.

108.    As a direct and proximate result of Zacherl's false representations, which were reasonably calculated to deceive Kasparov, made with the intent to deceive Kasparov, and which did in fact deceive Kasparov, Kasparov was fraudulently excluded from ownership, access to and control over its digital assets in the Team Tokens Wallet, currently worth over US $8,100,000.

## COUNT VI: CONSTRUCTIVE FRAUD

109.    Kasparov realleges each and every allegation contained in paragraphs 1-108 above as if fully set forth herein.

110.    As detailed above, Kasparov and Zacherl had a relationship of trust and confidence.  In particular, Kasparov had retained Zacherl as its agent, and afforded him a signatory authority over millions of dollars of assets belonging to Kasparov.  An agent, such

as Zacherl, stands in a relationship of trust and confidence with its principal (Kasparov). While this is always true, it is particularly acute where, as here, the agent is entrusted with access of million of dollars of the principal's assets. Further, Kasparov and Zacherl had established a course of dealing, in which Kasparov regularly instructed Zacherl to conduct financial transactions on behalf of Kasparov, for the benefit of the Rook Project.

111. On April 20, 2022, Zacherl took advantage of his position of trust and confidence by falsely representing to Kasparov that if Kasparov added Detz to the Team Tokens Wallet, Zacherl could conduct three pre-authorized transactions on behalf of Kasparov. In particular, on April 20, 2022, Zacherl electronically messaged the two principals of Kasparov, Tiantian Kullander and Taiyang Zhang, stating "[n]eed a few signatures today please. Payments from strategic reserve → to 4 keepers from pilot program integration bounties[,]" and that "[i]f you guys can help knock out the first one we can polish off the rest." In response, one of the principals of Kasparov, Tiantian Kullander, replied "[d]one." Through this communication, Zacherl offered to conduct three of the four transactions on behalf of Kasparov if Zacherl's co-conspirator Detz was added as a signatory to the Team Tokens Wallet by Kasparov. After receiving this message, relying on Zacherl's representation, on or around April 20, 2022, Kasparov added Detz as a signatory to the Teams Tokens Wallet so that Zacherl, Detz, and Linehan could conduct transactions on behalf of Kasparov, and subject to Kasparov's control.

112. Reasonably relying on Zacherl's false representations, Kasparov gave Detz signatory authority to the Team Tokens Wallet on or around April 20, 2022.

113. However, after obtaining signatory access for Detz, on or about June 7, 2022, Zacherl working with his co-conspirators, Linehan, Detz, and Tommy van Rheeden, fraudulently removed Kasparov-affiliated signatories: Wang, Nadimpalli, and Zhang from the Team Tokens Wallet without Kasparov's authorization. Furthermore, Zacherl added van

Rheeden, an individual unaffiliated with the Rook Project as a new signatory to the Team Tokens Wallet without Kasparov's authorization. Since three signatories are required to conduct transactions, and only two Kasparov-affiliated signatories continue to be signatories today—one since Tiantian Kullander's tragic passing—Zacherl and his co-conspirators currently control the digital assets in the Team Tokens Wallet, to the exclusion of Kasparov, the rightful owner.

114.    By taking advantage of his relationship of trust and confidence with Kasparov, Zacherl sought to benefit himself by obtaining control, ownership, and dominion over the digital assets in the Team Tokens Wallet, currently worth over US $8,100,000.

## COUNT VII: CIVIL CONSPIRACY

115.    Kasparov realleges each and every allegation contained in paragraphs 1-114 above as if fully set forth herein.

116.    Zacherl agreed with Linehan, Detz and/or van Rheeden to misappropriate (1) the Team Tokens Wallet, (2) the Second Company Wallet, (3) the digital assets held in the Team Tokens Wallet and (4) the digital assets in the Second Company Wallet, all belonging to Kasparov (other than any tokens still payable to Zacherl under the Services Agreement, if any).

117.    On or about June 7, 2022, in furtherance of this agreement, Zacherl, Linehan and Detz cut off Kasparov's ability to access the digital assets held in the Team Tokens Wallet by removing (1) Benjamin Wang, (2) Susruth Nadimpalli, and (3) Bainy Zhang as signatories to the Team Tokens Wallet, and replacing them with their co-conspirator, van Rheeden. These changes effectively cut off Kasparov's possession and control of the digital assets in the Team Tokens Wallet, transferring that control to Zacherl, Linehan, Detz, and their agent, van Rheeden.

118.    On or about July 5, 2022, also in furtherance of the same unlawful conspiracy, Zacherl and Linehan cut off Kasparov's ability to access the digital assets held in the Second

Company Wallet by removing (1) Bainy Zhang and (2) Susruth Nadimpalli as signatories, and replacing them with their co-conspirators, Detz and van Rheeden. At the same time, Zacherl and Linehan increased the number of required confirmatory signatories necessary to effectuate transactions from the Second Company Wallet, ensuring that only they and their agents—and not Kasparov or its affiliates—would have the necessary number of signatures required to effectuate any such transactions.

119. Kasparov, which has been left without the ability to access or exercise dominion over assets valued in excess of US $8,100,000 as of the date of this Complaint, has been damaged as a result of Zacherl's conspiracy with Linehan, Detz and van Rheeden.

120. Zacherl's acts of conspiracy as set forth above were intentional, wanton, and malicious.

## COUNT VIII: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.C. GEN. STAT. § 75-1.1 *et seq.*

121. Kasparov realleges each and every allegation contained in paragraphs 1-120 above as if fully set forth herein.

122. Zacherl was engaged by Kasparov's Founders to provide services for the Rook Project. Thus, the allegations contained in paragraphs 1-121 concern a dispute between two different market participants, not an intra-entity dispute.

123. As described above, Zacherl engaged in unfair and deceptive trade practices by developing and executing a plan with his co-conspirators to fraudulently induce Kasparov's consent to access to Kasparov's Wallets and then, in furtherance of that plan, making a series of misrepresentations calculated to deceive Kasparov and misappropriate over US$8,100,000 (as of the date of this Complaint) in digital assets belonging to Kasparov.

124. Zacherl's actions affected commerce by preventing Kasparov's access to its property, which is used, *inter alia*, in its regular course of business as part of the Rook Project.

31

125.     Zacherl's actions proximately caused injury to Kasparov.  Kasparov reasonably and justifiably relied on Zacherl's false representations when it allowed Zacherl and his co-conspirators access to the Wallets, and Zacherl knew and intended that Kasparov would rely on his representations in providing such access.

### COUNT IX: DECLARATORY RELIEF
**Pled in the Alternative to Breach of Contract**

126.     Kasparov realleges each and every allegation contained in paragraphs 1-79 and 96-125 above as if fully set forth herein.

127.     An actual controversy has arisen and now exists between Kasparov and Zacherl concerning whether Zacherl has any right to possess the Team Tokens Wallet or the Second Company Wallet or any of the digital assets therein.

128.     Kasparov desires a judicial determination of the rights and duties of the parties and a declaration that (1) it has the right to immediately possess the Team Tokens Wallet, the Second Company Wallet and all assets contained therein, and (2) that Zacherl has no right to possess the Team Tokens Wallet or the Second Company Wallet or any of the digital assets therein (other than any tokens still payable to Zacherl under the Services Agreement, if any).

129.     Such declaration and determination is necessary and appropriate at this time so that the parties may ascertain their rights and duties.  Moreover, a judicial determination is necessary in order to avoid any additional consequences or damage that may occur if the rights of the parties are not adjudicated at this time.

### PRAYER FOR RELIEF

WHEREAS, Plaintiff Kasparov respectfully requests that this Court award the following relief:

    a.  Compensatory and punitive damages in an amount to be proven at trial;

    b.  Pre- and post-judgment interest, to the extent allowable;

c.  A declaration that (1) Kasparov has the right to immediately possess and access the Team Tokens Wallet, the Second Company Wallet and any and all of the digital assets therein, and (2) that Zacherl has no right to possess or access the Team Tokens Wallet or the Second Company Wallet or any of the digital assets therein (other than any tokens still payable to Zacherl under the Services Agreement, if any).

d.  Treble damages pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*;

e.  All fees, costs, and expenses, including reasonable attorneys' fees related to this action;

f.  Punitive damages; and

g.  Such other and further relief as the Court deems just and proper.

Dated: February 10, 2023

Respectfully Submitted,

 s/Joseph A. Mahoney

Joseph A. Mahoney
N.C. State Bar No. 55318

Cecilia G. Rambarat
N.C. State Bar No. 58047

MAYER BROWN LLP
300 South Tryon Street, Suite 1800
Charlotte, NC 28202
(704) 444-3654
jamahoney@mayerbrown.com
crambarat@mayerbrown.com

Alex J. Lakatos (*pro hac vice* application forthcoming)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
alakatos@mayerbrown.com

Matthew H. Marmolejo (*pro hac vice* application forthcoming)
MAYER BROWN LLP
333 South Grand Avenue, Ste. 4700
Los Angeles, CA 90071
(213) 229-9500
mmarmolejo@mayerbrown.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2023, I electronically filed the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Baxter Chad Ewing
Lead Attorney/Attorney to be Noticed
Womble Bond Dickinson (US) LLP
One Wells Fargo Center 301 S. College Street, Suite 3500
Charlotte, NC 28202 USA
Phone: 704-331-4996
Fax: 704-338-7854
Email:Chad.Ewing@wbd-Us.Com

*Counsel for Defendant*

s/Joseph A. Mahoney
Joseph A. Mahoney

*Counsel for Plaintiff*