IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| KASPAROV, PTE LTD., <br><br> Plaintiff, <br><br> v. <br><br> JOSEPH ZACHERL, <br><br> Defendant. | Case No. 5:22-cv-00503 <br><br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS** |

In a desperate attempt to avoid dismissal of its Amended Complaint, Kasparov uses its opposition brief as a third chance to recast its claims. This time, Kasparov makes the frivolous assertion that Zacherl "stole over $8.1 million dollars of cryptocurrency and tokens from Kasparov." Opp. at 1 (ECF No. 20, the "Opposition"). The Amended Complaint is entirely devoid of any facts supporting the notion that there was any theft of Kasparov's property, and to suggest otherwise demonstrates the fallacy of Kasparov's claims. Indeed, it is undisputed that the tokens and cryptocurrency that were allegedly converted remain untouched in the relevant Wallets.

For this reason, Kasparov concocts a conversion claim based solely on the allegation that "Zacherl, Linehan, Detz and/or their agents seized control of the two Wallets to the exclusion of Kasparov, and have used that control to eliminate Kasparov's access to and control over the digital assets" contained in the Wallets. Amend. Compl. ¶ 18.[1] By its own admission, therefore, Kasparov's main grievance is that it has been deprived of the purported right to "control" over the

---

[1] "Both of the . . . wallets . . . are multi-signature wallets that required several individual approvals (sometimes referred to as 'signatures') from appointed/authorized individuals before any transaction to or from the Wallets could be consummated." Amend. Compl. ¶ 11.

1

Wallets, which under North Carolina law is clearly an alleged loss of an intangible interest that cannot form the basis of a conversion claim.[2]

But in making this argument, Kasparov conveniently ignores the fact that the Amended Complaint is devoid of any allegation that Zacherl used his position as a signatory as a means to interfere with Kasparov's ownership interests or to deny Kasparov the right to withdraw its cryptocurrency or tokens. Indeed, nowhere in the Amended Complaint is there any allegation that Kasparov proposed a transaction to Zacherl and the other signatories purportedly aligned with him, including a withdrawal of cryptocurrency or tokens from the relevant Wallets, that was refused or rejected. Neither does Kasparov allege that it made a demand for the return of its cryptocurrency or tokens. As a result, Kasparov's analogies to changing locks on a home or safe are meaningless. At most, Kasparov's claim boils down to a simple assertion that Zacherl and the other signatories allegedly aligned with him theoretically and hypothetically as a matter of governance *could* use their majority to block Kasparov from withdrawing cryptocurrency or tokens or proposing transactions involving assets in the Wallets if Kasparov sought to do so. It has not, and therefore, the conversion claim fails as a matter of law.

It is not surprising, therefore, that after Zacherl filed his first motion to dismiss, Kasparov amended its complaint to conjure up new breach of contract and fraud claims to save the incurable defects in the original complaint. Kasparov's new theory is that Zacherl contractually agreed to be Kasparov's agent; therefore, in its fantastical view, any transaction proposed by the principal (*i.e*, Kasparov) involving the Wallets must be honored by the agent (*i.e.*, Zacherl). Notably, however, when Kasparov commenced this litigation, it did not allege any offer or promise by

---

[2] Kasparov's suggestion that granting the motion to dismiss would turn North Carolina into a proverbial Barbary Coast is absurd, much less a betrayal of well-accepted North Carolina law cited in Zacherl's opening brief that the conversion claim fails as a matter of law.

Zacherl to act as Kasparov's agent purportedly in exchange for being made a signatory on the Wallets. This new "principal/agent" argument is simply made up out of thin air. Indeed, it is undisputed that there is no written contract between the parties, otherwise it would have been attached to the complaint. Grasping at straws, Kasparov instead asserts that its "discussions" with Zacherl culminated in the formation of a purported contract (Opp. at 12), but Kasparov cannot identify a single alleged communication that reflects an offer and acceptance, consideration or any facts reflecting a meeting of the minds, including most importantly the terms specifying performance obligations.

In the entire Amended Complaint, Kasparov specifically identifies only one communication with Zacherl, an electronic message Zacherl purportedly sent on April 20, 2022, several months after Kasparov claims that the contract was allegedly formed in October 2021 (when Kasparov made Zacherl a signatory). Putting aside the discordant timing of the April 2022 message, on its face, it cannot possibly form the basis of a breach of contract claim, and neither can the vague and conclusory assertions that somehow Zacherl agreed to be Kasparov's agent.

Kasparov's defective fraud claim is based entirely on the same April 2022 electronic message. Remarkably, the Amended Complaint fails to allege any facts demonstrating that the message, on its face, was false. According to Kasparov, the message states that Zacherl will execute certain transactions, which Kasparov does not allege Zacherl failed to do. But in its Opposition, Kasparov asks the Court to adopt its contrived interpretation that the message contained an omission, namely that Zacherl allegedly concealed an ulterior motive to conduct transactions not authorized by Kasparov or to block Kasparov from its assets. This claim is frivolous because nothing in Zacherl's message can reasonably be interpreted to circumscribe his authority as a signatory, and there are no particularized factual allegations supporting the alleged

concealment of his purported ulterior motives. Separately, none of Kasparov's arguments in opposition cure the remaining pleading defects on its fraud claim.

As to unjust enrichment, Kasparov's assertion that Zacherl would reap a "windfall" if the status quo is maintained fails because Kasparov has not alleged Zacherl used his signatory status to take possession of the cryptocurrency and tokens, or benefit from his alleged refusal to act in compliance with Kasparov's hypothetical demands. Finally, Kasparov does not dispute Zacherl's argument that its conspiracy and declaratory relief claims must be dismissed if its other claims fail.

## ARGUMENT

### A. KASPAROV'S ATTEMPT TO FOIST A CONVERSION CLAIM FAILS AS A MATTER OF LAW.

Kasparov seeks to confuse the Court by mischaracterizing Zacherl's arguments regarding its conversion claim. Kasparov's conversion claim fails, not only because the digital assets are intangible, but also – and primarily – because the only "property" interest Kasparov alleges was "converted" was its majority control of the Wallets. There is no allegation that there was any theft or improper use of the assets in the Wallets, and Kasparov acknowledges as much in its Opposition that "[t]here is no dispute that Kasparov owns the $8.1 million in assets in the two Wallets." Opp. at 18.

Accordingly, the Amended Complaint leaves no doubt that Kasparov merely alleges it has been deprived of its purported right to have the majority of the signatures for exercising control of the Wallets. The proof of the pudding in this regard is Kasparov's allegation that it "demanded that Zacherl and his co-conspirators restore Kasparov's *control and ability to utilize*" the Wallets, *not* that it demanded return of the assets. Amend. Compl. ¶ 77 (emphasis added). This is a key distinction clearly glossed over by Kasparov.

Kasparov's acknowledgement that the only "property" allegedly *taken* from it was its "control and ability to utilize" the Wallets is fatal to the conversion claim, because "control and ability to utilize" is an intangible interest. *See* Mem. at 13. At best, Kasparov has alleged that it relinquished its control over the Wallets based on alleged misrepresentations by Zacherl. Courts have rejected nearly identical conversion claims. *See McFee v. Presley*, No. 21 CVS 18665, 2022 WL 2678896, at *5 (N.C. Super. July 11, 2022) (plaintiff's claim that she was misled into relinquishing her membership interest in an LLC "does not give rise to a claim for conversion").

Unable to claim theft of tangible property, Kasparov's next argument – that Zacherl has exercised unlawful dominion over the assets – is designed to distort the allegations in the Amended Complaint. Kasparov analogizes to a "house-sitter who changes the homeowner's locks," falsely implying that Zacherl has declared the assets in the Wallets as his own and refused to allow Kasparov to withdraw or transact with them. Opp. at 2 and 6. Nothing of that nature is alleged (nor is it true). Rather, Kasparov alleges that the Wallets are multi-signature wallets requiring the approval of a certain number of signatories "before any transaction to or from the Wallets could be consummated," and that the Kasparov-aligned signatories are now outnumbered by the allegedly Zacherl-aligned signatories. Amend. Compl. ¶ 11. But Kasparov does not allege that Zacherl actually used his alleged voting bloc to deprive Kasparov of anything or to transfer Kasparov's assets out of the Wallets for his or any other person's benefit. Its claims are based merely on the *hypothetical* that *if* Kasparov were to demand a withdrawal of its assets or some other transaction involving the assets in the Wallets, the transaction *could* be blocked (not that it would be). Kasparov's frustration with the corporate governance system it admittedly created does not support a conversion claim.

The cases Kasparov relies upon are inapposite because they involve claims that the defendant stole or wrongfully retained and/or misused property belonging to the plaintiff, including after a demand for return was made.³ The same is true for the conversion of cryptocurrency cases Kasparov cites.⁴ Thus, even if the digital assets were treated as tangible property, and Kasparov's claim were treated as a conversion of money claim (which it should not be, *see* Mem. at 13-14), the claim would fail because there is no allegation of any theft or misuse of Kasparov's assets or dispute as to Kasparov's ownership of the assets.

**B.  KASPAROV'S ATTEMPT TO MANUFACTURE A CONTRACTUAL RELATIONSHIP WITH ZACHERL FAILS AS A MATTER OF LAW.**

It is undisputed that there is no written contract between Kasparov and Zacherl concerning the management of the Wallets. Unable to point to specific factual allegations supporting the formation of a valid contract, Kasparov instead leads with the misleading argument that Zacherl seeks to impose a heightened pleading burden. Under *Iqbal/Twombly*, "[a] court is not required to accept [t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," and courts have held that – particularly in the absence of a written contract – "conclusory allegations" with "no factual content of any specific promises" are insufficient to state

---

³ *See e.g., Cole v. Saks, Inc.*, No. 5:06-CV-229-F, 2008 WL 11429753, at *13 (E.D.N.C. Feb. 15, 2008) (employee refused to return money upon demand mistakenly paid to him by his employer); *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 723 S.E.2d 744 (2012) (retailer claimed it sent bill-payment service provider money that was supposed to be used to pay bills, but instead was retained by the provider, who refused to return the money).

⁴ *See e.g., Hodges v. Monkey Cap., LLC*, No. 17-81370-CV, 2018 WL 9686569, at *9 (S.D. Fla. Aug. 14, 2018) ("Defendants have kept Plaintiffs' cryptocurrency . . . after Plaintiffs requested its return, despite Defendants' lack of any ownership interest in the money," and "Defendants have utilized Plaintiffs' cryptocurrency to cover [their] own business expenses and enrich themselves."); *Lagemann v. Spence*, No. 18CIV12218GBDRWL, 2020 WL 5754800, at *10 (S.D.N.Y. May 18, 2020) (plaintiffs alleged that they transferred cryptocurrency to defendant under false pretenses and that plaintiffs kept, misused and refused to return them).

a claim for breach of contract. *Levy v. Infilaw Corp.*, No. 3:17-CV-00026-GCM, 2017 WL 3573825, at *3 (W.D.N.C. Aug. 17, 2017) (internal quotations and citations omitted).[5]

Thereupon, Kasparov resorts to stretching and fabricating multiple allegations that are not found anywhere in the Amended Complaint, and independently and together, simply cannot support a breach of contract claim. *First*, Kasparov's general references to "discussions of how Zacherl would use his access" and a singular assertion that "Zacherl expressly told Kasparov" he would use the signatory access to support the Project and execute transactions on Kasparov's behalf are so conclusory and vague that they cannot form any basis to establish a contractual relationship. Opp. at 12 (citing Amend. Compl. ¶¶ 47 and 41). Significantly, Kasparov does not identify the dates or contents of these "discussions," whether they were oral or in writing, what exactly was "expressly" said, or who on behalf of Kasparov was involved. *Second*, Kasparov asserts that it alleged "the dates Kasparov and Zacherl entered into the contracts," but refers to ¶¶ 82-84 of the Amended Complaint which allege merely that Kasparov made Zacherl a signatory on the Wallets in October 2021. Notably, the Amended Complaint fails to specify the dates of the "discussions" that supposedly culminated in the formation of a contract. Opp. at 12. *Third*, Kasparov's claim that it alleged "the terms of the agreement," including that Zacherl agreed to "be subject to Kasparov's control" and to "manage the contents of the Wallets subject to Kasparov's directions," is pure fiction. Opp. at 12-13. There is no allegation that Kasparov ever told Zacherl he would be "subject to Kasparov's control" or "directions," or that Zacherl ever agreed to that.

---

[5] Kasparov eschews the clear precedent establishing that its conclusory allegations are insufficient under *Iqbal/Twombly* and relies on cases involving *written* contracts. *See Superior Performers v. Meaike,* No. 1:13CV1149, 2014 WL 5819826, at *3-4 (M.D.N.C. Nov. 10, 2014) (referring to "signed" agreements, and "paragraphs" of the agreements); *Cosma v. Fit Kitchen, LLC*, No. 22 CVS 7915, 2022 WL 2815117, at *1 (N.C. Super. July 18, 2022) (involving an LLC operating agreement).

*Fourth*, Kasparov contends that the "parties engaged in course of dealing consistent with the contracts." *Id.* at 13. But apart from conclusory allegations that Zacherl agreed to these terms, there is no allegation that Zacherl ever manifested an understanding that he had agreed to act as Kasparov's agent, and thus no allegation supporting a meeting of the minds as to the terms of the agreement or the parties' mutual obligations thereunder.

As a last ditch effort to save its breach of contract claim, Kasparov asks the Court to infer that it would not have afforded Zacherl access to the Wallets unless Zacherl agreed to act as its agent, and to find an implied-in-fact contract on that basis. *See* Opp. at 14-16. However, "where one party simply believes that a contract exists, but there is no meeting of the minds, the individual seeking to enforce the obligation upon an express or implied-in-fact theory is without a remedy." *See Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol*, 893 F. Supp. 526, 538 (E.D.N.C. 1994). Kasparov's flawed legal recitation relies on a series of inapposite cases, all of which found the existence of an implied contract based on an extensive course of conduct. Here, there is not a single allegation in the Amended Complaint that Zacherl made any statement or engaged in any conduct reflecting that he had agreed to serve as Kasparov's agent.

Kasparov's contention that its breach of implied covenant of good faith and fair dealing claim should survive even if its breach of contract claim is dismissed is contrary to clear precedent. *ATV Broad., LLC v. Bahakel Commc'ns, Ltd.*, No. 3:20CV403-GCM, 2021 WL 134692, at *2 (W.D.N.C. Jan. 13, 2021). Kasparov does not contend that its breach of contract and implied covenant claims are based on different factual allegations. *See id.* Indeed, the two claims are based on the same allegations concerning changes to the Wallet signatories.

## C. KASPAROV'S UNJUST ENRICHMENT CLAIM IS CLEARLY DEFECTIVE.

Kasparov misleads the Court by asserting that Zacherl has been unjustly enriched because he has possession of Kasparov's assets and is refusing to return them. *See* Opp. at 18. There is no allegation that Zacherl has refused to return any of Kasparov's tokens or other assets, much less any allegation that Zacherl has sole or exclusive possession of such assets. The assets remain in the same Wallets Kasparov created and funded before Zacherl was made a signatory. And under the multi-signature structure Kasparov alleges, Zacherl cannot unilaterally use his signatory status to enrich himself. Moreover, Kasparov does not allege that Zacherl has at any time asserted that he has any ownership interest in or right to use Kasparov's assets, and concedes "[t]here is no dispute" as to Kasparov's ownership. Opp. at 18. It is unclear how Zacherl supposedly benefits merely from being made a signatory, which is the only benefit Kasparov alleges it bestowed upon him. Indeed, as discussed above, Kasparov does not allege Zacherl ever used his authority as a signatory to enrich himself in any way.

It follows that Kasparov fails to allege a *measurable* benefit was conferred upon Zacherl. *First*, Kasparov's assertion that maintaining the status quo would result in "windfall" in the amount of $8.1 million to Zacherl is based on the same fallacy, repeated throughout the Opposition, that Zacherl stole the assets in the Wallets. There is no allegation Zacherl took any assets from the Wallets for himself or any other person, and Kasparov acknowledges its ownership of the assets is not in dispute. *Second*, there is no allegation in the Amended Complaint that Zacherl was unjustly enriched by receiving a salary, and thus Kasparov fails to satisfy any of the elements of unjust enrichment based on that theory. Amend. Compl. ¶¶ 96-100. In fact, Kasparov alleges that it agreed to pay Zacherl for his services. *Id*. ¶ 39.

9

Kasparov's reliance on *Women's Lacrosse*, heavy as it seems, is illustrative of its desperation to portray Zacherl as having engaged in conduct far beyond what is alleged. In that case, the plaintiff selected the defendant, a sports events manager, to host and manage lacrosse tournaments under a profit-sharing agreement. The plaintiff alleged that the defendant was unjustly enriched when the defendant refused to comply with the plaintiff's directive to return registration fees and deposits from tournament participants after the plaintiff decided to cancel the tournament. Based on the profit sharing agreement, the defendant never had the right to keep all of the money for itself, and thus the court held that the plaintiff stated a claim for unjust enrichment. *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570, 586 (M.D.N.C. 2020). In contrast, Kasparov does not allege Zacherl took or kept any assets from the Wallets for himself or any other person for that matter. For this reason, Kasparov's reliance on *Women's Lacrosse* is entirely misplaced given that the defendant in that case clearly kept the money derived from lacrosse tournaments for itself.

### D. KASPAROV'S FRAUD CLAIM IS WOEFULLY VAGUE AND CONCLUSORY, AND FAILS TO SATISFY THE SPECIFICTY TO STATE A CLAIM.

The Amended Complaint cites only the April 2022 electronic message from Zacherl as the basis for Kasparov's fraud claim. But the Amended Complaint fails to allege particularized facts demonstrating the falsity of any statement contained within that message. Kasparov alleges that the message constituted an offer by Zacherl "to conduct three of the four transactions on behalf of Kasparov if Zacherl's co-conspirator Detz was added as a signatory to the Team Tokens Wallet." Amend. Compl. ¶ 52. But Kasparov does *not* allege that Zacherl failed to conduct the three referenced transactions on behalf of Kasparov or that the text of Zacherl's message was false.

Now, Kasparov urges the Court to look beyond the text and adopt its preferred, and entirely contrived, interpretation. Under Rule 9(b), allegations of a fraudulent statement must be supported

by specific misrepresentations, and cannot be supported solely by allegations the plaintiff claims support "inferences in the plaintiff's favor" that a particular statement should be deemed fraudulent. *See In re Peel*, No. 09-04770-8-SWH, 2010 WL 670026, at *2 (Bankr. E.D.N.C. Feb. 19, 2010). For this reason alone, the fraud claim should be dismissed. Recognizing the clear law on this issue, Kasparov contends that the message was fraudulent because "Zacherl asked Kasparov to add Detz as a new signatory to perform certain, specific transactions" but concealed his true intent to conduct "transactions contrary to Kasparov's wishes" and "exclude Kasparov from its own assets." Opp. at 23. But nothing in Zacherl's message reflects a commitment to conduct only the three referenced transactions or to otherwise circumscribe his authority as a signatory. And the fraud by omission assertion is frivolous in the absence of allegations that Zacherl ever used his signatory authority to conduct any transactions Kasparov did not approve of, or to deny any request by Kasparov. Moreover, "fraud by omission . . . is by its very nature, difficult to plead with particularity," and such claims must be supported by several additional allegations in order to satisfy Rule 9(b), which Kasparov entirely disregards in the Amended Complaint.[6]

Likewise, Kasparov has no answer to the flaws inherent in the other fraud elements. Kasparov's acknowledgement that the only allegations supporting fraudulent intent are that

---

[6] *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (quotations omitted). "To plead fraud by omission, a claimant must plausibly allege: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why [claimant's] reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance." *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013) (internal quotations and citation omitted).

Zacherl made "false representations . . . regarding the need for signatory access to conduct transactions on behalf of Kasparov," Opp. at 24 n.2, kills the alleged fraud. In other words, Kasparov attempts to satisfy the intent element by merely pointing to its concocted interpretation of Zacherl's electronic message. The actual text of the message cannot possibly support an inference of fraud. Moreover, Kasparov cannot identify any allegations that Zacherl actually used his authority as a signatory in a manner that would suggest fraudulent intent. Under clear North Carolina precedent, conclusory allegations of motive are insufficient. *See* Mem. at 22-23.[7]

Kasparov also fails to allege reasonable reliance and causation. Kasparov does not purport to have relied on what the message actually said, but rather on its subjective interpretation. Kasparov has no answer to the indisputable fact that the signatories to the Wallets changed as a result of the premature death of an alleged Kasparov-aligned signatory.

Finally, Kasparov's contention that its fraud claim is not duplicative of its breach of contract claim because it pertains to misrepresentations made "prior to and during the formation of the contracts at issue" is plain wrong. Opp. at 26. The contracts were allegedly formed in October 2021 (when Zacherl became a signatory) and thus could not have been fraudulently induced by the April 2022 message. *See* Amend. Compl. ¶¶ 81-84.

As for constructive fraud, Kasparov does not claim to have alleged Zacherl owes it a fiduciary duty, as is required. Based on this alone, the Court should dismiss the constructive fraud claim. Kasparov's only arguments against dismissal of the claim are that the Court should *infer* the existence of a fiduciary duty based on its allegations concerning its relationship with Zacherl. But Kasparov's argument that it "adequately pleads a principal-agent relationship," which "arises

---

[7] *See also Edwards v. JPMorgan Chase Bank,* N.A., No. 1:20-CV-128, 2020 WL 1814423, at *5 (M.D.N.C. Apr. 9, 2020) ("The conclusory allegations of Chase's motives . . . are insufficient").

when parties manifest consent that one shall act on behalf of the other and subject to his control," fails because nothing in the April 2022 message can be read to constitute Zacherl's "manifest consent" to act as Kasparov's agent. Kasparov's request that the Court find a *de facto* fiduciary relationship is unsupported by the cases Kasparov cites, which involve clearly recognized fiduciary relationships, such as between real estate brokers and their clients. Opp. at 26-27.

E.  **KASPAROV'S UDTPA CLAIM HAS NO DEFENSE AND IS MERITLESS.**

Kasparov's defense of its UDTPA claim reflects a misunderstanding of the statute. Specifically, Kasparov ignores ample authority cited by Defendant illustrating that *all* intra-business disputes – including not only employer-employee disputes, but also partners within a business, distinct entities/individuals in a joint venture, band members, and sales representatives and sub-representatives – are outside the scope of the UDTPA. *See* Mem. at 28, n.8. In light of allegations demonstrating that this is a dispute among the management of and/or participants in the Rook Project, and is therefore an intra-business dispute, Kasparov's attempt to distinguish its relationship with Zacherl from an employer-employee relationship is futile. The key inquiry is whether Kasparov alleged any impact on "*other* market participants or customers" besides itself[8]—Kasparov does not attempt to argue that it has done so. On the contrary, Kasparov's statement that "Zacherl and Kasparov were different market participants" is a concession that Kasparov is the only market participant impacted.

Kasparov's only argument as to the extraterritorial application of the statute is to assert that courts need not examine whether there was any impact on North Carolina commerce if the

---

[8] *Stuart v. Churn LLC*, No. 1:19-CV-369, 2019 WL 13217414, at *2 (M.D.N.C. June 6, 2019). Kasparov's attempt to frame Zacherl as an independent contractor fails for the same reason. *See Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (dismissing independent contractor's UDTPA claim on the ground that his "claim for royalties affects only his relationship with Abbott under the consulting Agreement and not anyone else").

defendant happens to reside in North Carolina. This is wrong as a matter of law, and ignores the four cases Defendant cited where courts found that defendants' residence in North Carolina was not sufficient to satisfy the "affecting commerce" requirement. Mem. at 30, n.9. Kasparov attempts to cure its deficient pleading by asserting for the first time in its Opposition that "Zacherl's unfair and deceptive conduct took place in North Carolina." Opp. at 30. But there is no allegation as to where Zacherl was when he sent the April 2022 message or engaged in any other alleged conduct, and thus Kasparov once again asks the Court to draw an inference. In any event, the cases Defendant cites make clear that the critical inquiry is whether there was any in-state injury (i.e. an impact on North Carolina commerce), which Kasparov does not purport to have alleged.

Finally, Kasparov acknowledges that the alleged deceptive practices that provide the basis for its UDTPA claim are the same allegations underlying its fraud claim—namely, the April 2022 message. Opp. at 32. Kasparov therefore fails to satisfy the heightened pleading standard as to its UDTPA claim for the same reasons it fails as to its fraud claim.

### F. KASPAROV'S CONSPIRACY AND DECLARATORY RELIEF CLAIMS SHOULD BE DISMISSED.

Kasparov does not dispute that its conspiracy claim and request for declaratory relief must be dismissed in the event the other substantive causes of action are dismissed. Its contention that its declaratory relief claim is distinct from its other claims because it is "premised on the need for prospective clarity that Kasparov is the lawful owner of the digital assets in the Wallets" cannot be reconciled with its acknowledgement that "there is no dispute" as to that issue. Opp. at 18.

### G. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

The Court should dismiss Kasparov's complaint with prejudice. Rather than support Kasparov's argument that claims dismissed for failure to state a claim should be dismissed without prejudice, an often-quoted excerpt of one of the two cases Kasparov cites states that the default

rule is the opposite: "Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be . . . rendered with prejudice." *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009). In the other case, some but not all claims were dismissed, and the court concluded discovery as to the remaining claims could provide a factual basis to replead those claims in an amended complaint. *Armstrong v. City of Greensboro*, No. 1:15CV282, 2016 WL 1312037, at *3 (M.D.N.C. Mar. 31, 2016). "At this juncture in this case, where [P]laintiff already has had multiple opportunities to plead this claim, including in response to motion to dismiss by [D]efendant[]," the Court should dismiss Kasparov's Amended Complaint with prejudice. *Adinolfi v. N. Carolina Dep't of Just.*, No. 5:18-CV-539-FL, 2020 WL 1490700, at *5 (E.D.N.C. Mar. 24, 2020).[9]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendant's Memorandum of Law In Support of his Motion to Dismiss, Defendant respectfully requests that the Court grant his Motion and enter an order dismissing the Amended Complaint with prejudice and granting him such other and further relief as the Court deems just and proper.

This the 21st day of April, 2023.

                              */s/ B. Chad Ewing*
                              WOMBLE BOND DICKINSON (US) LLP

---

[9] *See also Mathewson for Est. of Smith v. Cooper*, No. 1:20-CV-00944, 2022 WL 18863955, at *4 (M.D.N.C. Aug. 22, 2022) ("Quite simply, given Plaintiff's previous failed attempts to articulate a cognizable claim, the court cannot discern how Plaintiff could correct the pleading defects"); *Mitter v. LNU*, No. 1:22-CV-00256-MR, 2023 WL 2762036, at *2 (W.D.N.C. Apr. 3, 2023) ("Despite multiple opportunities to amend his Complaint . . . Plaintiff has again failed to state any claim for relief"); *Rogers v. Carson*, No. 3:19-CV-00342-MR, 2021 WL 880383, at *5 (W.D.N.C. Mar. 9, 2021) ("Because Plaintiff fails again to state a claim for relief after having been afforded multiple opportunities to amend, the Court will dismiss Plaintiff's Second Amended Complaint with prejudice.")

B. Chad Ewing (N.C. State Bar No. 27811)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4996
Facsimile: (704) 338-7854
E-Mail: chad.ewing@wbd-us.com

HOGAN LOVELLS US LLP
Michael C. Hefter (*pro hac vice* application forthcoming)
Alan M. Mendelsohn (*pro hac vice* application forthcoming)
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
E-Mail: michael.hefter@hoganlovells.com
 alan.mendelsohn@hoganlovells.com

## CERTIFICATE OF SERVICE

  I hereby certify that on April 21, 2023, the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** was served via ECF as follows:

  Joseph A. Mahoney
  N.C. State Bar No. 55318
  Cecilia G. Rambarat
  N.C. State Bar No. 58047
  MAYER BROWN LLP
  300 North Tryon Street, Suite 1800
  Charlotte, NC 28202
  (704) 444-3654
  jamahoney@mayerbrown.com
  crambarat@mayerbrown.com

  *Counsel for Plaintiff*

            */s/ B. Chad Ewing*
            B. Chad Ewing