## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

KASPAROV, PTE LTD.,                          )
                                             )
    *Plaintiff/Counterclaim Defendant,*          )  Case No. 5:22-cv-00503
                                             )
                                             )
v.                                           )
                                             )
JOSEPH ZACHERL,                              )  **ANSWER AND COUNTERCLAIM**
                                             )
    *Defendant/Counterclaim Plaintiff.*          )
                                             )  **JURY TRIAL DEMANDED**
                                             )
                                             )
                                             )
                                             )

    Pursuant to Rules 8 and 13 of the Federal Rules of Civil Procedure, Defendant Joseph

Zacherl ("Zacherl" or "Defendant"), by and through his undersigned counsel, responds to the

First Amended Complaint (the "FAC") as follows:

## COUNT I (CONVERSION), COUNT IV (UNJUST ENRICHMENT) AND COUNT VII (CONSPIRACY):

### FOR A FIRST DEFENSE

Plaintiff's remaining claims are barred by contributory negligence.

### FOR A SECOND DEFENSE

Plaintiff's remaining claims are barred by assumption of risk.

### FOR A THIRD DEFENSE

Plaintiff's remaining claims are barred by estoppel.

### FOR A FOURTH DEFENSE

Plaintiff's remaining claims are barred by lack of proximate cause.

### FOR A FIFTH DEFENSE

Plaintiff's remaining claims are barred by failure to mitigate damages.

Defendant responds to the numbered paragraphs of the FAC as follows:

## <u>NATURE OF THE ACTION</u>

1.      Defendant denies the allegations in paragraph 1 of the FAC.

2.      Defendant denies the allegations in paragraph 2 of the FAC.

3.      Defendant denies the allegations in paragraph 3 of the FAC.

4.      Defendant denies the allegations in paragraph 4 of the FAC.

5.      Defendant lacks sufficient information to form a belief as to the truth of the allegations concerning the incorporation or founding of Kasparov; therefore, they are denied. Defendant denies the remaining allegations in paragraph 5 of the FAC.

6.      Defendant responds to the allegations in paragraph 6 of the FAC as follows:

        a.      Defendant lacks sufficient information to form a belief as to the truth of the allegations concerning Kasparov's intent with respect to the formation or purpose of the Project as described in paragraph 6(a) of the FAC; therefore, they are denied. Defendant denies the remaining allegations in paragraph 6(a) of the FAC.

        b.      Defendant denies the allegations in paragraph 6(b) of the FAC.

        c.      Defendant denies the allegations in paragraph 6(c) of the FAC.

        d.      Defendant lacks sufficient information to form a belief as to the truth of the allegations concerning Kasparov's intent with respect to the ownership of the Project as described in paragraph 6(d) of the FAC; therefore, they are denied. Defendant admits that ownership and control of the DAO Treasury Wallet was turned over to the Project. Defendant denies the remaining allegations in paragraph 6(d).

        e.      Defendant admits that "[a]ll decisions relevant to the project are made by the DAO, and the DAO also can hire and pay individuals to assist it in running the Rook Project"

and that "[a]ll decisions by the DAO are voted on by ROOK token holders." Defendant denies the remaining allegations in paragraph 6(e) of the FAC.

7.    Defendant lacks sufficient information to form a belief as to the truth of the allegations concerning any decision by Talo and Amber to collaborate with Defendant or anyone else; therefore, the allegations in paragraph 7 of the FAC are denied.

8.    Defendant admits that VolleyFire is an entity owned and controlled by Zacherl. Defendant denies that he entered into any agreement with Plaintiff that has the title "Services Agreement." Defendant admits that the document referred to in the FAC as the "Services Agreement" is a writing that speaks for itself and is the best evidence of its contents. Except as admitted herein, Defendant denies the allegations contained in paragraph 8 of the FAC.

9.    Defendant admits that "Linehan and Detz did not receive a share of the initial tokens." The term "salary" is vague and ambiguous; therefore, the allegation that they received "salary for their work" is denied. Except, as admitted herein, Defendant denies the allegations contained in paragraph 9 of the FAC.

10.   Defendant admits that certain persons affiliated with Kasparov were involved in creating certain digital wallets and otherwise responds to the allegations in paragraph 10 of the FAC as follows:

    a.    Defendant admits that the wallet referred to in the FAC as the "Team Tokens Wallet" was established on or around October 31, 2020 by certain persons affiliated with Kasparov. Defendant denies the remaining allegations in paragraph 10(a) of the FAC.

    b.    Defendant admits the wallet referred to in the FAC as the "Second Company Wallet" was established on or around June 15, 2021 by certain persons affiliated with

Kasparov, and that $700,000 in USD Coin was transferred to it on or around June 16, 2021. Defendant denies the remaining allegations in paragraph 10(b) of the FAC.

11.    Defendant admits the allegation in paragraph 11 of the FAC that "Both of the above-referenced wallets (the 'Wallets') are multi-signature wallets that required several individual approvals (sometimes referred to as 'signatures') from appointed/authorized individuals before any transaction to or from the Wallets could be consummated." Defendant denies the remaining allegations in paragraph 11 of the FAC.

12.    Kasparov's allegations as to the date on which "Zacherl and Linehan were added as signatories to one or both of the two Kasparov Wallets" are vague and ambiguous, and are therefore denied. Defendant admits that certain persons affiliated with Kasparov "made Zacherl and Linehan signatories to both Wallets" and that "Zacherl was added to both Wallets on or around October 14, 2021, while Linehan was added to the Team Tokens Wallet on or around January 6, 2022 and to the Second Company Wallet on or around February 23, 2022." Defendant denies the remaining allegations in paragraph 12 of the FAC.

13.    Defendant denies the allegations in paragraph 13 of the FAC.

14.    Defendant admits that the electronic message referenced in paragraph 14 of the FAC is a writing that speaks for itself and is the best evidence of its contents. Defendant admits that on or around April 20, 2022, certain persons affiliated with Kasparov added Detz as a signatory to the wallet referred to in the FAC as the "Teams Tokens Wallet." Defendant denies the remaining allegations in paragraph 14 of the FAC.

15.    Defendant denies the allegations in paragraph 15 of the FAC.

16.    Defendant denies the allegations in paragraph 16 of the FAC to the extent Kasparov alleges that any "authorization" was required in order to make changes to the

signatories to the wallet referred to in the FAC as the "Team Tokens Wallet." Defendant denies the remaining allegations in paragraph 16.

17.     Defendant denies the allegations in paragraph 17 of the FAC.

18.     Defendant denies the allegations in paragraph 18 of the FAC.

19.     Defendant denies the allegations in paragraph 19 of the FAC.

20.     Defendant denies the allegations in paragraph 20 of the FAC.

## PARTIES

21.     Defendant lacks sufficient information to form a belief as to the truth of the allegations in paragraph 21 of the FAC; therefore, those allegations are denied.

22.     Defendant admits that he is an individual domiciled in the Eastern District of North Carolina.

23.     Defendant admits that VolleyFire is a limited liability company incorporated in Delaware. Defendant denies the remaining allegations in paragraph 23 of the FAC.

24.     Defendant denies the allegation in paragraph 24 of the FAC.

25.     Defendant admits that Kyle Detz is an individual domiciled in Massachusetts.

## JURISDICTION AND VENUE

26.     Defendant admits that this Court has personal jurisdiction over him because he is domiciled in North Carolina.

27.     Defendant admits that 28 U.S.C. § 1332(a)(1) is a writing that speaks for itself and is the best evidence of its contents. Defendant admits that the amount Plaintiff claims to be in controversy exceeds $75,000. Defendant admits that the parties are diverse.

28.     Defendant admits that 28 U.S.C. § 1391(b)(1) is a writing that speaks for itself and is the best evidence of its contents. Defendant admits that venue is proper because Defendant resides in this district.

29.     Defendant lacks sufficient information to form a belief as to the truth of the allegations concerning the formation of the Rook Project; therefore, those allegations are denied. Defendant admits that the blog posts referenced in paragraph 29 of the FAC are writings that speak for themselves and are the best evidence of their contents.  Except as admitted herein, the allegations contained in paragraph 29 of the FAC are denied.

30.     The allegations in paragraph 30 of the FAC are vague and ambiguous and are therefore denied.

31.     Defendant admits that "Stakers" involved in the Project" could earn ROOK tokens in return for supplying liquidity into a common pool that "Keepers" could use for flash loans.  Defendant lacks sufficient information to form a belief as to the truth of the allegation that "Kasparov supported and encouraged the public's participation in the Project through the issuance of a native token"; therefore, that allegation is denied.  Plaintiff's allegation that "[a]s participation in the Project grows, the value of the Project increases" is vague and ambiguous and therefore denied.  Defendant denies the remaining allegations in paragraph 31 of the FAC.

32.     Defendant lacks sufficient information to form a belief as to the truth of the allegations in paragraph 32 of the FAC; therefore, they are denied.

33.     Defendant admits that certain persons affiliated with Kasparov were involved in establishing several cryptocurrency wallets.  Defendant denies the remaining allegations in paragraph 33 of the FAC.

        a.     Defendant denies that the "First Company Wallet" was funded with $1.5 million in USD Coin from only two initial seed investors, Polychain and 3AC.  Defendant otherwise lacks sufficient information to form a belief as to the truth of the allegations in paragraph 33(a) of the FAC; therefore, they are denied.

b. Defendant admits that as of about May 14, 2021 the "Team Tokens Wallet" had five authorized signatories: (1) Taiyang Zhang, (2) Tiantian Kullander, (3) Bainy Zhang, (4) Benjamin Wang, and (5) Susruth Nadimpalli. Defendant admits that the "Team Tokens Wallet" required the approval/signature of three signatories before a transaction involving the "Team Tokens Wallet" would be effectuated. Defendant admits that at the time of the creation of the "Team Tokens Wallet," he had an ownership interest in 40,000 ROOK tokens. Defendant denies the remaining allegations in paragraph 33(b).

c. Defendant admits that certain persons affiliated with Kasparov were involved in establishing a new wallet, the "Second Company Wallet," and that at the time of its creation, the list of signatories of the "Second Company Wallet" were (1) Tiantian Kullander, (2) Taiyang Zhang, (3) Bainy Zhang, and (4) Susruth Nadimpalli. Defendant admits that at that time, the confirmation security protocols applicable to the "Second Company Wallet" required approval from two signatories before a transaction involving that Wallet would be effectuated. Defendant denies the remaining allegations in paragraph 33(c) of the FAC.

d. Defendant admits that on or about November 10, 2020 certain persons affiliated with Kasparov were involved in establishing the DAO Treasury Wallet. Defendant admits that control over the Project and with it the DAO Treasury Wallet was turned over to public ROOK Token holders. Defendant admits the DAO Treasury Wallet holds multiple different cryptocurrencies and tokens. Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 33(d) of the FAC; therefore, they are denied.

34. Defendant denies that any assets in any of the wallets referenced in paragraph 34 of the FAC have been "misappropriated" or "looted." Defendant otherwise lacks sufficient

information to form a belief as to the truth of the remaining allegations in paragraph 33(a) of the FAC; therefore, they are denied.

35.     Defendant denies the allegations in paragraph 35 of the FAC.

36.     Defendant admits that his involvement with the Project began in April, 2020, when Kasparov entered into the document referred to in the FAC as the "Services Agreement" with Zacherl (through his entity, VolleyFire LLC).  Defendant admits that he controls VolleyFire LLC.  Defendant admits that the document referred to as the "Services Agreement" was executed by Defendant on or around April 29, 2020 in North Carolina, where he resides.   Defendant admits that the document referred to as the "Services Agreement" is a writing that speaks for itself and is the best evidence of its contents.   Except as admitted herein, the allegations contained in paragraph 36 are denied.

37.     Defendant admits that the document referred to in the FAC as the "Services Agreement" is a writing that speaks for itself and is the best evidence of its contents.  Defendant admits that he was paid $10,000 per month.   Defendant denies the remaining allegations in paragraph 37 of the FAC.

38.     Defendant admits that he recommended to Kasparov that Linehan be engaged to work on the Project.  Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 38 of the FAC; therefore, they are denied.

39.     Defendant admits that he recommended that Detz be engaged to work on the Project.  Defendant admits that Detz was to be paid for his services from the DAO Treasury Wallet.  Defendant otherwise lacks sufficient information to form a belief as to the truth of the allegations in paragraph 39 of the FAC; therefore, they are denied.

40.    Defendant admits that Linehan and Detz were compensated directly by the KeeperDAO using funds from the DAO Treasury Wallet for their services in support of the DAO's community initiatives.  Defendant otherwise lacks sufficient information to form a belief as to the truth of the allegations in paragraph 40 of the FAC; therefore, they are denied.

41.    Defendant admits that between October 2021 and February 2022, certain persons affiliated with Kasparov added Defendant and Linehan as signatories to the "Second Company Wallet" (containing over $700,000 in USD Coin).  Defendant denies the remaining allegations in paragraph 41 of the FAC.

42.    Defendant admits that or about October 13, 2021, certain persons affiliated with Kasparov added Zacherl as a signatory to the "Second Company Wallet."  Except as admitted herein, the allegations contained in paragraph 42 of the FAC are denied.

43.    Defendant admits that on or about February 23, 2022, certain persons affiliated with Kasparov added Linehan as a signatory to the "Second Company Wallet."  Except as admitted herein, the allegations contained in paragraph 43 of the FAC are denied.

44.    Defendant admits that as of around February 24, 2022, there were six signatories to the "Second Company Wallet": (1) Tiantian Kullander, (2) Taiyang Zhang, (3) Bainy Zhang, (4) Susruth Nadimpalli, (5) Zacherl, and (6) Linehan.

45.    Defendant denies the allegations in paragraph 45 of the FAC.

46.    Defendant denies that he or Linehan had any "plan to use their new signatory authority as a means to deny Kasparov, its owners, representative and affiliates access to the Second Company Wallet."  Defendant denies the remaining allegations contained in paragraph 46 of the FAC.

47. Defendant admits that between October 2021 and January 2022, Zacherl and Linehan were added as signatories to the "Team Tokens Wallet." Defendant denies the remaining allegations in paragraph 47 of the FAC.

48. Defendant denies the allegations in paragraph 48 of the FAC.

49. Defendant admits that on or about October 13, 2021, certain persons affiliated with Kasparov added Zacherl as a signatory to the "Team Tokens Wallet." Except as admitted herein, the allegations contained in paragraph 49 of the FAC are denied.

50. Defendant admits the allegations in paragraph 50 of the FAC.

51. Defendant denies the allegations in paragraph 51 of the FAC.

52. Defendant admits that the electronic message dated April 20, 2022 is a writing that speaks for itself and is the best evidence of its contents. Defendant admits that on or around April 20, 2022, certain persons affiliated with Kasparov added Detz as a signatory to the "Teams Tokens Wallet." Defendant denies the remaining allegations in paragraph 52 of the FAC.

53. Defendant admits that on or about June 7, 2022, Benjamin Wang, Susruth Nadimpalli, and Bainy Zhang were removed as signatories on the "Team Tokens Wallet." Defendant admits that Wang and Nadimpalli had been signatories to the "Team Tokens Wallet" since its creation in November 2020. Defendant denies the remaining allegations in paragraph 53 of the FAC.

54. Defendant admits that on or about June 7, 2022, van Rheeden was added as a signatory to the "Team Tokens Wallet." Defendant denies the remaining allegations in paragraph 54 of the FAC.

55.     Defendant denies the allegations in paragraph 55 of the FAC to the extent they suggest that Kasparov's authorization of changes to any signatories on the "Team Tokens Wallet" was required.  Defendant denies the remaining allegations in paragraph 55 of the FAC.

56.     Defendant admits that Tiantian Kullander and Taiyang Zhang remained signatories on the "Team Tokens Wallet."  Defendant lacks sufficient information to form a belief as to the truth concerning the allegations regarding Tiantian Kullander passing away; therefore, that allegation is denied.  Defendant admits that three signatories are needed to conduct any transactions using the "Team Tokens Wallet."  Defendant denies the remaining allegations in paragraph 56 of the FAC.

57.     Defendant denies the allegations in paragraph 57 of the FAC.

58.     Defendant admits that  on or around November 28, 2022, Tiantian Kullander, one of Kasparov's principals, was removed as a signatory to the "Team Tokens Wallet."  Defendant lacks sufficient information to form a belief as to the truth of the remaining allegations in paragraph 58 of the FAC; therefore, they are denied.

59.     Defendant admits that on or around January 10, 2023, van Rheeden was removed as a signatory for the "Team Tokens Wallet."  Defendant admits that another entity was added as a signatory in his place.  Except as admitted herein, the allegations contained in paragraph 59 of the FAC are denied.

60.      Defendant denies the allegations in paragraph 60 of the FAC to the extent they suggest that Kasparov's approval of changes to any signatories on the "Team Tokens Wallet" was required.  Defendant denies the remaining allegations in paragraph 60 of the FAC.

61.     Defendant denies the allegations in paragraph 61 of the FAC.

62.     Defendant admits that on or around July 5, 2022, Defendant and Linehan changed the signatory confirmation security protocol applicable to the "Second Company Wallet" to require a minimum of three confirmatory approvals from registered signatories.  Defendant denies the remaining allegations in paragraph 62 of the FAC.

63.     Defendant admits that on or around November 28, 2022, Tiantian Kullander was removed by Defendant and others as a signatory to the "Second Company Wallet."  Defendant lacks sufficient information to form a belief as to the truth of the allegation concerning Tiantian Kullander passing away; therefore, that allegation is denied.  Defendant denies the remaining allegations in paragraph 63 of the FAC.

64.     Defendant admits that on or around January 10, 2023, van Rheeden was removed as a signatory for the "Team Tokens Wallet."  Defendant admits that another entity was added as a signatory in his place.  Except as admitted herein, Defendant denies the allegations contained in paragraph 64 of the FAC.

65.     Defendant denies the allegations in paragraph 65 of the FAC to the extent they suggest that Kasparov's approval of changes to any signatories on the "Second Company Wallet" was required.  Defendant denies the remaining allegations in paragraph 65 of the FAC.

66.     Defendant denies the allegations in paragraph 66 of the FAC.

67.     Defendant denies the allegations in paragraph 67 of the FAC.

68.     Defendant denies the allegations in paragraph 68 of the FAC.

## COUNT I: CONVERSION

69.     Defendant incorporates its responses to paragraphs 1-68 above as if fully set forth herein.

70.     Defendant lacks sufficient information to form a belief as to the truth of the allegations regarding the value of the assets in the "Team Tokens Wallet" or "Second Company

Wallet" as of the time of the FAC. Defendant denies the remaining allegations in paragraph 70 of the FAC.

71.     Defendant denies the allegations in paragraph 71 of the FAC.

72.     Defendant denies the allegations in paragraph 72 of the FAC.

73.     Defendant denies the allegations in paragraph 73 of the FAC.

74.     Defendant denies the allegations in paragraph 74 of the FAC to the extent they suggest that any changes to signatories on the Wallets required Kasparov's approval. Defendant denies that any changes to the signatories on the Wallets described in paragraph 74 of the FAC were "unlawful." The remaining allegations concerning changes to signatories are vague and ambiguous and are therefore denied.

75.     Defendant denies the allegations in paragraph 75 of the FAC.

76.     Defendant denies the allegations in paragraph 76 of the FAC.

77.     The allegations in paragraph 77 of the FAC are vague and ambiguous and are therefore denied.

78.     Defendant denies the allegations in paragraph 78 of the FAC.

79.     Defendant denies the allegations in paragraph 79 of the FAC.

## COUNT II: BREACH OF CONTRACT

80.     Defendant has no duty to respond to the allegations contained in paragraphs 80-88 of the FAC because the Court dismissed Count II of the FAC in its July 25, 2023 Order. To the extent that Defendant has a duty to respond to these allegations, they are denied.

81.     Defendant denies the allegations in paragraph 81 of the FAC.

82.     Defendant denies the allegations in paragraph 82 of the FAC.

83.     Defendant denies the allegations in paragraph 83 of the FAC.

84.     Defendant denies the allegations in paragraph 84 of the FAC.

85.     Defendant denies the allegations in paragraph 85 of the FAC.

86.     Defendant denies the allegations in paragraph 86 of the FAC.

87.     Defendant denies the allegations in paragraph 87 of the FAC.

88.     Defendant denies the allegations in paragraph 88 of the FAC.

## COUNT III: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

89.     Defendant has no duty to respond to the allegations contained in paragraphs 89-95 of the FAC because the Court dismissed Count III of the FAC in its July 25, 2023 Order.  To the extent that Defendant has a duty to respond to these allegations, they are denied.

90.     Defendant denies the allegations in paragraph 90 of the FAC.

91.     Defendant denies the allegations in paragraph 91 of the FAC.

92.     Defendant denies the allegations in paragraph 92 of the FAC.

93.     Defendant denies the allegations in paragraph 93 of the FAC.

94.     Defendant denies the allegations in paragraph 94 of the FAC.

95.     Defendant denies the allegations in paragraph 95 of the FAC.

## COUNT IV: UNJUST ENRICHMENT

### Pled in the Alternative to Breach of Contract

96.     Defendant incorporates its responses to paragraphs 1-95 above as if fully set forth herein.

97.     Defendant denies the allegations in paragraph 97 of the FAC.

98.     Defendant denies the allegations in paragraph 98 of the FAC.

99.     Defendant denies the allegations in paragraph 99 of the FAC.

100.    Defendant denies the allegations in paragraph 100 of the FAC.

## COUNT V: ACTUAL FRAUD

101.     Defendant has no duty to respond to the allegations contained in paragraphs 101-108 of the FAC because the Court dismissed Count V of the FAC in its July 25, 2023 Order.  To the extent that Defendant has a duty to respond to these allegations, they are denied.

102.     Defendant denies the allegations in paragraph 102 of the FAC.

103.     Defendant denies the allegations in paragraph 103 of the FAC.

104.     Defendant denies the allegations in paragraph 104 of the FAC.

105.     Defendant denies the allegations in paragraph 105 of the FAC.

106.     Defendant denies the allegations in paragraph 106 of the FAC.

107.     Defendant denies the allegations in paragraph 107 of the FAC.

108.     Defendant denies the allegations in paragraph 108 of the FAC.

## COUNT VI: CONSTRUCTIVE FRAUD

109.     Defendant has no duty to respond to the allegations contained in paragraphs 109-114 of the FAC because the Court dismissed Count VI of the FAC in its July 25, 2023 Order.  To the extent that Defendant has a duty to respond to these allegations, they are denied.

110.     Defendant denies the allegations in paragraph 110 of the FAC.

111.     Defendant denies the allegations in paragraph 111 of the FAC.

112.     Defendant denies the allegations in paragraph 112 of the FAC.

113.     Defendant denies the allegations in paragraph 113 of the FAC.

114.     Defendant denies the allegations in paragraph 114 of the FAC.

## COUNT VII: CIVIL CONSPIRACY

115.     Defendant incorporates its responses to paragraphs 1-115 above as if fully set forth herein.

116.     Defendant denies the allegations in paragraph 116 of the FAC.

117.     Defendant denies the allegations in paragraph 117 of the FAC.

118.    Defendant denies the allegations in paragraph 118 of the FAC.

119.    Defendant denies the allegations in paragraph 119 of the FAC.

120.    Defendant denies the allegations in paragraph 120 of the FAC.

## COUNT VIII: UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.C. GEN. STAT. § 75-1.1 *et seq.*

121.    Defendant has no duty to respond to the allegations contained in paragraphs 121-125 of the FAC because the Court dismissed Count VIII of the FAC in its July 25, 2023 Order. To the extent that Defendant has a duty to respond to these allegations, they are denied.

122.    Defendant denies the allegations in paragraph 122 of the FAC.

123.    Defendant denies the allegations in paragraph 123 of the FAC.

124.    Defendant denies the allegations in paragraph 124 of the FAC.

125.    Defendant denies the allegations in paragraph 125 of the FAC.

## COUNT IX: DECLARATORY RELIEF

### Pled in the Alternative to Breach of Contract

126.     Defendant has no duty to respond to the allegations contained in paragraphs 126-129 of the FAC because the Court dismissed Count IX of the FAC in its July 25, 2023 Order.  To the extent that Defendant has a duty to respond to these allegations, they are denied.

127.    Defendant denies the allegations in paragraph 127 of the FAC.

128.    Defendant denies the allegations in paragraph 128 of the FAC.

129.    Defendant denies the allegations in paragraph 129 of the FAC.

# COUNTERCLAIM

Joseph Zacherl brings these counterclaims against Kasparov alleging as follows:

## NATURE OF ACTION

1.      Zacherl and Kasparov agreed, pursuant to a Partnership Agreement, that Zacherl would join as "a Founding Partner and Lead Trader of KeeperDAO."  The KeeperDAO is a decentralized platform of computers that scan blockchain networks such as Ethereum for arbitrage trading opportunities. Later rebranded as RookDAO in April 2022, KeeperDAO's members could participate in a variety of ways, including contributing computing and developer resources to help the Rook Protocol function, using their Rook tokens to vote on various governance initiatives, or merely holding their tokens.  Consistent with the agreement between Zacherl and Kasparov memorialized in the Partnership Agreement, Kasparov created a Binance exchange account (the "Binance Account") for Zacherl to use to store his cryptocurrency and the profits of cryptocurrency trades executed by an artificial intelligence bot he developed, which is known as Arby.  Arby's trading activity, including using assets contained in the Binance Account, generated significant profits for the partnership formed between Zacherl and Kasparov pursuant to the Partnership Agreement (the "Partnership").

2.      However, despite Zacherl's upholding his side of the bargain under the Partnership Agreement by engaging in profitable trading for the benefit of the KeeperDAO, the Partnership and himself, on July 21, 2022, Kasparov changed the password on the Binance Account in order to lock Zacherl out of the account and deprive Zacherl of access to the Binance Account and the cryptocurrency contained therein.  At that time, the only cryptocurrency in the Binance Account was owned by Zacherl.  By locking Zacherl out of the Binance Account, Kasparov also caused Arby to stop operating, in direct violation of one of the explicit terms of

the Partnership Agreement—that Zacherl would "lead all internal trading efforts at KeeperDAO" and that Arby would "continue operating." This has deprived Zacherl not only of the value of the cryptocurrency in the Binance Account, now worth over $220,000, but also the profits he would otherwise derive from Arby trading activity. Zacherl has demanded that Kasparov pay him the value of the cryptocurrency contained in, and restore his access to, the Binance Account, but Kasparov has refused.

3. Accordingly, Zacherl brings these counterclaims based on Kasparov's misconduct.

## PARTIES

4. Counterclaim Plaintiff Joseph Zacherl is an individual domiciled in the Eastern District of North Carolina.

5. Counterclaim Defendant Kasparov is a limited company incorporated under the laws of Singapore. Kasparov maintains its principal place of business in Singapore. Kasparov has at all relevant times been owned by Talo and Tiantian Kullander, a principal of Amber, on a 50/50 basis.

## JURISDICTION AND VENUE

6. The Court has personal jurisdiction over Kasparov under N.C. Gen. Stat. § 1-75.4 because this case arises from Kasparov's theft of property belonging to Zacherl, a North Carolina resident, and the injury was felt in North Carolina.

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the Counterclaim Plaintiff is of different citizenship than the Counterclaim Defendant.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action, is situated in this District.

## FACTUAL BACKGROUND

9.     On or around April 29, 2020, Zacherl (through an entity called VolleyFire) entered an agreement with Kasparov (i.e. Talo and Amber) regarding Zacherl joining Amber and Talo as a "Founding Partner and Lead Trader of KeeperDAO" (defined above as the Partnership Agreement).

10.     The Partnership Agreement sets forth the parties' expectation that Zacherl would "lead all internal trading efforts at KeeperDAO."  In connection with the Partnership Agreement, and Zacherl's role as "Lead Trader of KeeperDAO," Kasparov created the Binance Account in July 2020 and instructed Zacherl to use the account for KeeperDAO trading activity.

11.     The purpose of the Binance Account was to store cryptocurrency for use in conducting trades, and to serve as a repository for profits from those trades.  The trades were executed by Arby, an AI bot created by Zacherl using code written by Zacherl.  At various points during the Partnership, the trades benefited the Partnership (including Kasparov and Zacherl), and the KeeperDAO.

12.     Kasparov originally created an email address, arbykeeper@protonmail.com, to control the Binance Account.  After creating the protonmail email account and the Binance account, Kasparov handed control of the email account and the Binance Account over to Zacherl and instructed him to change the two-factor authentication and password for both the email account and Binance Account.  Zacherl changed the password and enabled two-factor authentication for the email account and Binance Account.  At that point, only Kasparov and

Zacherl had access to the Binance Account. Zacherl could access the account by using the new password he created and two-factor authentication, and Kasparov still had access to the account through a protonmail seed recovery phrase, a unique set of characters used as a backup method to unlock an account.

13. Separately, on July 6, 2022, Kasparov inquired about moving its remaining allocation of ROOK tokens from one account to another, entirely separate from and not involving the Binance Account. Zacherl agreed to move Kasparov's remaining approximately 16,000 ROOK tokens to Kasparov's new wallet. However, Kasparov demanded payment of approximately 135,000 ROOK tokens by July 21, 2022 "or else," as partial satisfaction of an even larger amount of over 270,000 ROOK tokens Kasparov baselessly claimed were owed to it. Zacherl and others affiliated with him pointed out that Kasparov's claim that it was entitled to even approximately 135,000 ROOK tokens was inconsistent with Kasparov's own public statements regarding ROOK allocations. When asked to explain the basis for claiming entitlement to approximately 135,000 ROOK tokens, Kasparov refused to answer and instead made threats.

14. Consistent with Kasparov's demand of payment by July 21, 2022, on July 21, Kasparov revoked Zacherl's access to the protonmail email account and Binance Account, and thus locked Zacherl out of the Binance Account and deprived him of access to the cryptocurrency contained therein. Kasparov was able to accomplish this by using the above-referenced seed recovery phrase for the protonmail account. Kasparov then used the protonmail to bypass the password and two-factor authentication on the Binance Account and lock Zacherl out of the account. As of July 21, 2022, the cryptocurrency in the Binance Account consisted of the following assets, all owned by Zacherl:

- 82.8 ETH
- 1.1921 YFI
- 0.003 BTC
- 62,091.9 USDT
- 2 UNI
- 1.4 LINK
- 5.4 ENJ
- 0.3 DAI
- 0.2 BNB
- 8662 1inch

15.     At the time Kasparov took control over the Binance Account and locked Zacherl out, all of the assets in the Binance Account were owned by Zacherl, and none of the assets in the account were owned by Kasparov.

16.     On November 15, 2022, Zacherl's counsel made an oral demand to Kasparov's counsel to repay the value of the cryptocurrency in the Binance Account plus interest and damages for loss of the use of the funds in the Binance Account, and to restore Zacherl's access to the Binance Account.   During that call, Kasparov's counsel denied that Kasparov seized Zacherl's Binance Account.   However, Kasparov's counsel was immediately familiar with the incident Zacherl's counsel described, and claimed that the "freezing" of the assets in the Binance Account was not initiated by Kasparov.   Instead, Kasparov's counsel claimed that Binance froze the funds for violations of its terms of service, and claimed Kasparov does not have access to the funds. Kasparov's counsel also made the entirely incongruous statement that the release of the Binance Account funds could be included as part of settlement discussions.   At no point during these discussions did Kasparov's counsel ever dispute that the assets in the Binance Account were owned by Zacherl.   Further, Kasparov's counsel acknowledged that Zacherl no longer had access to the Binance Account or the funds contained therein.   Nevertheless, Kasparov has continued to exercise unlawful control and dominion over the Binance Account and the funds contained therein.

17.     Kasparov's counsel's statements that Kasparov was not involved in seizing the Binance Account, and that the funds were frozen, are false.  The method with which the account passwords were changed could only have been employed by using the protonmail seed recovery phrase which Kasparov had access to.  It is not possible for Binance to change a user's account password.  Moreover, the date on which the password was changed is the same date Kasparov used as a deadline for ceding to its demand to transfer ROOK tokens.  Kasparov's tactics are also entirely consistent with its warning in an email around this same time period: "you will see what extreme lengths we are willing to go."

18.     Not only has Kasparov stolen Zacherl's cryptocurrency valued at over $220,000, but by depriving Zacherl of access to the Binance Account, Kasparov has obstructed Zacherl's ability to continue trading using the assets in the Binance Account, causing Zacherl to lose significant profits.  For example, between January 2020 and December 2021, Zacherl's AI bot, Arby, generated approximately $7.5 million from trading activity, including using assets in the Binance Account.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION - CONVERSION

19.     Zacherl realleges each and every allegation contained in paragraphs 1-18 above as if fully set forth herein.

20.     As described above, Kasparov agreed to create the Binance Account on Zacherl's behalf.  Kasparov understood that the purpose of the Binance Account was to house cryptocurrency owned by Zacherl, and profits generated from trades executed by Zacherl's trading bot, Arby.

21.     The cryptocurrency assets in the Binance Account are specific and identifiable. A detailed breakdown of the cryptocurrency owned by Zacherl that is contained in the Binance

Account, over which Kasparov has unlawfully exercised control, is set forth above in paragraph 14.

22.     As of the date of this Counterclaim, the value in United States dollars of the cryptocurrency in the Binance Account is approximately $226,850.368.

23.     The cryptocurrency in the Binance Account is not comingled with Kasparov's assets.  As of July 21, 2022, the date of the conversion, the only assets contained in the Binance Account were owned by Zacherl, and Kasparov did not own any assets contained therein.

24.     As described above, Zacherl is the owner of the cryptocurrency in the Binance Account.  As such, Zacherl retains the right of immediate possession of the foregoing cryptocurrency.

25.     Kasparov has no right of ownership or possession of the cryptocurrency in the Binance Account.  Kasparov knows that it has no right of ownership or possession in assets contained in the Binance Account, all of which belong to Zacherl.

26.     On or around July 21, 2022, Kasparov changed the password on the Binance Account in order to lock Zacherl out of the account and deprive Zacherl of access to the Binance Account and the cryptocurrency contained therein.  Kasparov has unlawfully exercised dominion and control over the Binance Account and unlawfully interfered with Zacherl's lawful use and control over the Binance Account, and unlawfully deprived Zacherl from control over his Binance Account and the cryptocurrency contained therein.

27.     Zacherl demanded that Kasparov pay Zacherl the value of the cryptocurrency contained in the Binance Account at the time Kasparov seized control over the account.  Zacherl also demanded that his access to the Binance Account be restored.  Kasparov refused both demands.

28.      Zacherl has been injured by being deprived of access to his cryptocurrency valued at over $220,000, plus interest.  Moreover, by depriving Zacherl of access to the Binance Account, Kasparov has also deprived Zacherl of substantial profits from Arby trading activity, including using assets in the Binance Account, as Kasparov locking Zacherl out of the account caused Arby to stop operating.

29.      Kasparov's acts of conversion as set forth above were intentional, wanton, and malicious.

## SECOND CAUSE OF ACTION – UNJUST ENRICHMENT

30.      Zacherl realleges each and every allegation contained in paragraphs 1-29 above as if fully set forth herein.

31.      By changing the password on the Binance Account, and exerting complete control over the Binance Account and the cryptocurrency contained therein, a measurable benefit has been conferred on Kasparov: namely, possession and control of the cryptocurrency in the Binance Account, currently worth over $220,000.

32.      Through its actions, Kasparov deliberately and consciously accepted the benefit of possessing and controlling the cryptocurrency in the Binance Account, which is owned by Zacherl.

33.      The benefit that Kasparov accepted was not conferred by Zacherl officiously or gratuitously.  Rather, possession and control of the cryptocurrency in the Binance Account was taken and has been maintained without Zacherl's approval and over his objection.

34.      If Kasparov were permitted to maintain the benefit of possession and control of the Binance Account and the cryptocurrency contained therein, Kasparov would receive a windfall to which he is not entitled.  Under the circumstances, it would be inequitable to permit

Kasparov to maintain control over the Binance Account and cryptocurrency contained therein, to the detriment and exclusion of their rightful owner, Zacherl.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT

35. Zacherl realleges each and every allegation contained in paragraphs 1-34 above as if fully set forth herein.

36. The Partnership Agreement is a valid contract between Kasparov and Zacherl concerning Zacherl's role as "Founding Partner and Lead Trader of KeeperDAO." The Partnership Agreement was fully executed by Zacherl and Kasparov's two principals, Taiyang Zhang (i.e. Talo) and Tiantian Kullander (i.e. Amber). Kasparov and Zacherl fully agreed to the terms of the Partnership Agreement, and both parties accepted benefits conferred thereunder. Kasparov received the benefit of Zacherl's services, including trading profits generated by Zacherl's bot, Arby. Zacherl received the benefit of, among other things, payments described under the "Term Details" section of the Partnership Agreement.

37. The Partnership Agreement states that "[w]e expect Joey to lead all internal trading efforts at KeeperDAO." It also memorializes the parties' understanding that "Arby and its staking pool to continue operating from a separate entity to KeeperDAO," meaning that Zacherl's trading bot, Arby, would continue operating.

38. Zacherl has fully performed under the Partnership Agreement, including by earning substantial profits for the Partnership through trades executed by Arby, a bot developed by Zacherl.

39. Kasparov breached the Partnership Agreement by precluding Zacherl from leading "all internal trading efforts at KeeperDAO" and causing Arby to stop operating, all by locking Zacherl out of the Binance Account.

40.     As a direct result of Kasparov's breach of contract, Zacherl has lost access to the Binance Account and the cryptocurrency contained therein, has been prevented from leading all trading efforts at KeeperDAO, and has been deprived of the benefits Zacherl contracted to receive, including profiting from trading activity by Arby—a bot developed by Zacherl—using assets in the Binance Account.

## FOURTH CAUSE OF ACTION – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

41.     Zacherl realleges each and every allegation contained in paragraphs 1-40 above as if fully set forth herein.

42.     The Partnership Agreement is a valid contract between Kasparov and Zacherl, as described in paragraph 36.

43.     Zacherl has fully performed under the Partnership Agreement, as described in paragraph 38.

44.     Kasparov breached the Partnership Agreement, as detailed above in paragraph 36, including by precluding Zacherl from leading "all internal trading efforts at KeeperDAO" and causing Arby to stop operating.

45.     Kasparov breached the implied covenant of good faith and fair dealing by unlawfully and intentionally taking actions (i.e. changing the password on the Binance Account) that prevented Zacherl from receiving the benefits of his agreement with Kasparov.   By preventing Zacherl from leading all trading efforts at KeeperDAO, and causing Arby to stop operating, Kasparov has deprived Zacherl of the benefits Zacherl contracted to receive, including profiting from trading activity by Arby—a bot developed by Zacherl—using assets in the Binance Account.

**PRAYER FOR RELIEF**

WHEREAS, having fully responded to Kasparov's First Amended Complaint, Zacherl prays that:

a. the Court enter judgment for Zacherl on Kasparov's First Amended Complaint and Kasparov recovers nothing from it;

b. the Court enter judgment for Zacherl on his Counterclaim and award compensatory and punitive damages in an amount to be proven at trial, including the value of the cryptocurrency owned by Zacherl that is contained in the Binance Account (plus interest), as well as lost profit damages;

c. pre- and post-judgment interest, to the extent allowable;

d. a declaration that Zacherl has the right to immediately possess and access the Binance Account and the cryptocurrency contained therein, and that Kasparov has no right to possess or access the Binance Account or the cryptocurrency contained therein;

e. all fees, costs, and expenses, including reasonable attorneys' fees related to this action; and

f. such other and further relief as the Court deems just and proper.

Dated: August 8, 2023

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ B. Chad Ewing*
B. Chad Ewing (N.C. State Bar No. 27811)
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4996
Facsimile: (704) 338-7854
E-Mail: chad.ewing@wbd-us.com

HOGAN LOVELLS US LLP
Alan M. Mendelsohn (appearing by Special
Appearance)
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
E-Mail: alan.mendelsohn@hoganlovells.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, I electronically filed the foregoing **ANSWER AND COUNTERCLAIM** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Joseph A. Mahoney
N.C. State Bar No. 55318

Cecilia G. Rambarat
N.C. State Bar No. 8047

MAYER BROWN LLP
300 South Tryon Street, Suite 1800
Charlotte, NC 28202
(704) 444-3654
jamahoney@mayerbrown.com
crambarat@mayerbrown.com

Alex J. Lakatos (*pro hac vice*
application forthcoming)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
alakatos@mayerbrown.com

Matthew H. Marmolejo (*pro hac vice* application forthcoming)
MAYER BROWN LLP
333 South Grand Avenue,
Ste. 4700
Los Angeles, CA 90071
(213) 229-9500
marmolejo@mayerbrown.com

*Counsel for Plaintiff*

/s/ B. Chad Ewing
B. Chad Ewing

*Counsel for Defendant*