IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-503-D

| | | |
|---|---|---|
| KASPAROV, PTE LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JOSEPH ZACHERL, | ) | |
| | ) | |
| Defendant. | ) | |

On December 9, 2022, Kasparov, Pte Ltd., ("Kasparov" or "plaintiff") filed a complaint against Joseph Zacherl ("Zacherl" or "defendant") [D.E. 1]. On February 10, 2023, Kasparov filed an amended complaint [D.E. 12]. On March 3, 2023, Zacherl moved to dismiss the amended complaint for failure to state a claim [D.E. 17]. See Fed. R. Civ. P. 12(b)(6). On July 25, 2023, the court granted in part and denied in part Zacherl's motion to dismiss the amended complaint [D.E. 24].

On August 8, 2023, Zacherl answered and filed counterclaims against Kasparov alleging conversion, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing. See [D.E. 25] 22–26. On September 12, 2023, Kasparov moved to dismiss the counterclaims [D.E. 27] and filed a memorandum in support [D.E. 28]. See Fed. R. Civ. P. 12 (b)(6). On December 4, 2023, Zacherl responded in opposition [D.E. 43]. As explained below, the court grants in part and denies in part Kasparov's motion to dismiss the counterclaims. Zacherl's conversion counterclaim may proceed. The court dismisses Zacherl's remaining counterclaims.

KeeperDAO is a "decentralized platform of computers that scan[s] blockchain networks . . . for arbitrage trading opportunities." Countercl. [D.E. 25] 17. On April 29, 2020, Zacherl and Kasparov entered a Partnership Agreement, making Zacherl a Founding Partner and Lead Trader of KeeperDAO. See id. at 19. The Partnership Agreement stated Zacherl would "lead all internal trading efforts at KeeperDAO." Id.

In July 2020, Kasparov created a Binance account for Zacherl to use for KeeperDAO trading activity. See id. Kasparov used the email address arbykeeper@protonmail.com for the Binance account. See id. Zacherl received the email address account and the Binance account, and he created his own two-factor authentication and password for the accounts. See id. Both Zacherl and Kasparov had access to the accounts. See id. at 20. The Binance account stored cryptocurrency and allowed Zacherl to conduct trades. See id. at 19. Zacherl used Arby, his AI bot, to execute his trades. See id. These trades benefited the Partnership, Kasparov, Zacherl, and KeeperDAO. See id. Kasparov and Zacherl's cryptocurrencies were comingled at times. See id. at 20.

On July 6, 2022, Kasparov asked Zacherl to remove its remaining 16,000 ROOK tokens in the Binance account to a separate account. See id. Zacherl agreed. See id. Kasparov then demanded payment of 135,000 ROOK tokens by July 21, 2022, and stated Zacherl owed Kasparov 270,000 total ROOK tokens. See id.

On July 21, 2022, Kasparov revoked Zacherl's access to the protonmail email account and the Binance account, locking Zacherl out of both accounts. See id. Zacherl's personal cryptocurrency remained in the Binance account. See id. at 20–21. The cryptocurrency was valued

at over $220,000. See id. at 22. The only remaining cryptocurrency in the Binance account belongs to Zacherl. See id. at 21.

On November 15, 2022, Zacherl demanded Kasparov pay him the value of his cryptocurrency, interest, damages for loss of use of the cryptocurrency, and restored access to the Binance account. See id. In response, according to Zacherl, Kasparov falsely claimed it had not frozen the Binance account, but that Binance froze the account for violating Binance's terms of service. See id.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d, 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to the counterclaims in this case. For those counterclaims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). "If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted).

4

In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex. rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

In count one, Zacherl alleges that Kasparov converted the value of Zacherl's cryptocurrency when Kasparov seized control of the Binance account and refused to give Zacherl access. See Countercl. 22–24. Under North Carolina law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (cleaned up); see Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 505 F. Supp. 3d 570, 585 (M.D.N.C. 2020); Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2018 WL 1801417, at *6 (E.D.N.C. Apr. 16, 2018) (unpublished).

Zacherl must plausibly allege both that he retained lawful ownership of the chattel and a right to immediately possess the chattel. See Variety Wholesalers, Inc., 365 N.C. at 523, 723 S.E.2d at 747; Patterson v. Allen, 213 N.C. 632, 632, 197 S.E. 168, 168 (1938). "A successful claim of conversion requires that the plaintiff maintain a right of possession of the property

5

superior to that of the alleged converter from the time of the disputed action though the time of suit." Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 467 (M.D.N.C. 2003); see United States v. Currituck Grain, Inc., 6 F.3d 200, 205 (4th Cir. 1993); Volt Power, LLC v. Butts, No. 7:19-CV-149, 2021 WL 3781881, at *3 (E.D.N.C. Aug. 24, 2021) (unpublished); Springs v. Mayer Brown, LLP, No. 3:09-CV-352, 2012 WL 366283, at *9 (W.D.N.C. Jan. 27, 2012) (unpublished). In North Carolina, "only goods and personal property are properly the subjects of a claim for conversion." Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000). "[M]oney may be the subject of an action for conversion only when it is capable of being identified and described." Variety Wholesalers, Inc., 365 N.C. at 528, 723 S.E.2d at 750 (quotation omitted); see Alderman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 548 (M.D.N.C. 2002), aff'd, 58 F. App'x 47 (4th Cir. 2003) (per curiam) (unpublished). Moreover, a party cannot maintain a conversion claim where the money is "commingled with the alleged convertor's other funds." Alderman, 201 F. Supp. 2d 532 at 548. A party also cannot maintain a conversion claim for real property or assumption of abstract "interests such as business opportunities and expectancy interests." Norman, 140 N.C. App. at 414, 537 S.E.2d at 264; see also Edmondson v. Am. Motorcycle Ass'n., Inc., 7 F. App'x 136, 148 (4th Cir. 2001) (per curiam) (unpublished).

    Zacherl alleges that Kasparov created the Binance account for Zacherl to house Zacherl's personal cryptocurrency and Arby's trading profits. See Countercl. 22. According to Zacherl, on July 21, 2022, Kasparov converted Zacherl's cryptocurrency in the Binance account by changing the Binance account's password and denying Zacherl access to his cryptocurrency. See id. at 23. Zacherl values the cryptocurrency at $226,850.368. See id. Zacherl alleges he is the sole owner of the cryptocurrency in the Binance account, thus giving him the right to immediately possess the

cryptocurrency. See id. Zacherl does not allege any facts suggesting that he could not withdraw his cryptocurrency at any time from the Binance Account if he could simply access the account. Zacherl also does not plead any facts that the Partnership Agreement converted Zacherl's cryptocurrency into Kasparov's cryptocurrency. See Variety Wholesalers, Inc., 365 N.C. at 524, 723 S.E.2d at 747.

Kasparov argues that Zacherl's counterclaim should be against Binance, not Kasparov. See [D.E. 28] 6. In support, Kasparov relies on Zacherl's statement of what Kasparov's attorneys said and Binance's Terms of Use. See id. at 7.

The court rejects Kasparov's argument. Zacherl alleges that Kasparov's attorneys denied that Kasparov seized Zacherl's Binance account. See Countercl. 21. In the next paragraph, however, Zacherl alleges that Kasparov's attorneys' statements were false. See id. at 22. Moreover, Zacherl plausibly alleges that Binance did not freeze the account. Rather, Kasparov changed the password to prevent Zacherl's access to the account. See id. As for Kasparov's argument about Binance's Terms of Use, Kasparov argues that Zacherl violated the Terms of Use. See [D.E. 28] 7–8. The Terms of Use, however, are effective August 31, 2023. See [28-2] 2; [D.E. 43] 3, 6. This dispute arose in July 2022. See Countercl. 23. Thus, in evaluating Kasparov's motion to dismiss, the court declines to rely on the cited Terms of Use. Accordingly, the court declines to dismiss Zacherl's conversion counterclaim.

B.

In count two, Zacherl alleges that Kasparov took Zacherl's cryptocurrency in the Binance account, kept the benefit, and was thereby unjustly enriched. See Countercl. 24–25. Under North Carolina law, "[w]hen one party confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will

7

be required to make restitution therefor." Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 184 N.C. App. 688, 695, 647 S.E.2d 111, 116 (2007) (cleaned up). In evaluating an unjust enrichment claim, "the focus is . . . on the circumstances, if any, which would render it unjust for the owner to keep the benefit of the improvements without compensating the improver." Wright v. Wright, 305 N.C. 345, 353, 289 S.E.2d 347, 352 (1982). Specifically, the unjust-enrichment inquiry focuses on whether the circumstances of the case "give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." Norman, 140 N.C. App. at 417, 537 S.E.2d at 266. "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party," the benefit must be "measurable," and "the defendant must have consciously accepted the benefit." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

Zacherl alleges that Kasparov changed the Binance account password, allowing Kasparov to exercise complete control over an account containing approximately $220,000 of Zacherl's cryptocurrency. See Countercl. 24. According to Zacherl, Kasparov then refused to return the cryptocurrency or the cryptocurrency's value to Zacherl and thereby unjustly enriched Kasparov. See id.

Kasparov responds that Zacherl failed to plausibly allege that "Kasparov used its control over the Binance [a]ccount to reap financial benefits." [D.E. 28] 9 (quotation omitted); see [D.E. 24] 21. Zacherl replies that control alone, and not diverted assets, suffices to state an unjust enrichment claim. See [D.E. 43] 9. Zacherl also alleges that Kasparov "attempted to leverage its control over the Binance account for its own benefit." Id.; see Countercl. 21.

Kasparov having control and contemplating taking a benefit for itself does not constitute unjust enrichment. See, e.g., Booe, 322 N.C. at 570, 369 S.E.2d at 556. Zacherl has not plausibly

8

alleged that Kasparov accepted any benefit from the Binance account and Zacherl's cryptocurrency. Accordingly, the court dismisses Zacherl's unjust enrichment counterclaim.

C.

In count three, Zacherl alleges that Kasparov breached the Partnership Agreement by stopping Zacherl from leading "all internal trading efforts at KeeperDAO" and "causing Arby to stop operating." Countercl. 25. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); see Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276, 827 S.E.2d 458, 472 (2019) (per curiam); Cantrell v. Woodhill Enters., Inc., 273 N.C. 490, 497, 160 S.E.2d 476, 481 (1968); Montessori Children's House of Durham v. Blizzard, 244 N.C. App. 633, 636, 781 S.E.2d 511, 514 (2016); McLamb v. T.P., Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005) (citation omitted), disc. review denied, 360 N.C. 290, 627 S.E.2d 621 (2006).

The parties agree that the Partnership Agreement is a valid contract. See Countercl. 25; [D.E. 28] 10. In asking this court to dismiss Zacherl's breach of contract counterclaim, Kasparov argues that Zacherl does not cite specific provisions from the Partnership Agreement concerning Zacherl's control of internal trading or the use of Arby. See [D.E. 28] 10.

The Partnership Agreement states, "we expect [Zacherl] to lead all internal trading efforts at KeeperDAO" and "Arby and its staking pool [will] continue operating from a separate entity to KeeperDAO." Countercl. 25. Zacherl contends that "Kasparov breached the Partnership Agreement by precluding Zacherl from 'leading all internal trading efforts at KeeperDAO' and causing Arby to stop operating ... by locking Zacherl out of the Binance account." Id.

9

Zacherl's conclusory allegations do not link Zacherl's cryptocurrency in the Binance account to the Partnership Agreement or explain how KeeperDAO fits into the breach of contract counterclaim. Thus, although the Partnership Agreement exists, Zacherl does not plausibly allege that the Partnership Agreement required Zacherl to have access to the specific Binance account or to continuously use Arby. Zacherl also does not plausibly allege that "the Partnership Agreement governed the terms of the parties' partnership in connection with the KeeperDAO." [D.E. 43] 11. Accordingly, the court dismisses Zacherl's breach of contract counterclaim.

D.

In count four, Zacherl alleges that Kasparov breached the implied covenant of good faith and fair dealing by unlawfully and intentionally changing the Binance account's password and preventing Zacherl from benefitting from the Partnership Agreement. See Countercl. 26. Under North Carolina law, a contract implicitly contains "the basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform [its] obligations under the agreement." Maglione v. Aegis Fam. Health Ctrs., 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quotation omitted); see Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228–29, 333 S.E.2d 299, 305 (1985). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (cleaned up); see Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996). Breach of the implied covenant of good faith and fair dealing is a separate claim from breach of contract. See Nadendla v. WakeMed, 24 F.4th 299, 307–08 (4th Cir. 2022). Nevertheless, where there was no breach of contract, "it would be illogical . . . to conclude that [the party] somehow breached implied terms

10

of the same contract." SunTrust Bank v. Bryant/Sutphin Props., LLC, 222 N.C. App. 821, 833, 732 S.E.2d 594, 603 (2012); see Arnesen v. Rivers Edge Golf Club & Plantation, Inc., 368 N.C. 440, 451, 781 S.E.2d 1, 9 (2015); see also Sutherland v. Domer, No. 1:17-CV-769, 2018 WL 4398259, at *5 (M.D.N.C. Sept. 14, 2018) (unpublished) ("When a plaintiff's claim for breach of the implied covenant of good faith is based on an alleged breach of the express terms of the contract, these two claims are treated as a single breach of contract issue and evaluated together .... Where a plaintiff argues that the implied covenant was breached separate and apart from express breaches of the contract, it remains true that the implied covenant can never produce a result contrary to, or inconsistent with, the express language used in the agreement." (citation omitted)).

Zacherl bases his breach of the implied covenant counterclaim on an alleged breach of the same express terms as his breach of contract counterclaim. Zacherl's breach of contract counterclaim fails. Thus, the court also dismisses Zacherl's counterclaim for breach of the implied covenant of good faith and fair dealing. See Sutherland, 2018 WL 4398259, at *5; Arnesen, 368 N.C. at 451, 781 S.E.2d at 9; SunTrust Bank, 222 N.C. App. at 833, 732 S.E.2d at 603.

III.

In sum, the court GRANTS in part and DENIES in part plaintiff's motion to dismiss defendant's counterclaims [D.E. 27]. Defendant's conversion counterclaim survives. The court DISMISSES defendant's counterclaims for unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing.

SO ORDERED. This 5 day of April, 2024.

JAMES C. DEVER III
United States District Judge